THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED T. WALKER, Plaintiff in Error.

*Opinion filed June 20, 1911.*

1. CRIMINAL LAW—*when it must be presumed that court advised defendant of effect of plea of guilty.* Where the bill of exceptions does not purport to show what the court said to the defendant at the time a plea of guilty was entered, but the record merely states that the defendant "was fully advised by the court of the effect of rendering said plea," it must be presumed, in support of such recital, that the court discharged its duty in that regard.

2. SAME—*court should permit plea of guilty to be withdrawn if entered under clear misapprehension.* In the exercise of its sound legal discretion the court may vacate a judgment on a plea of guilty and permit the plea to be withdrawn, and it should do so where it appears that the plea was entered unadvisedly or through misapprehension, in consequence of misrepresentation by counsel. (*Krolage* v. *People,* 224 Ill. 456, followed.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

A. L. Gettys, for plaintiff in error.

W. H. Stead, Attorney General, John E. W. Wayman, State's Attorney, and W. Edgar Sampson, (Frederick Burnham, of counsel,) for the People.

Mr. Justice Vickers delivered the opinion of the court:

Fred T. Walker has sued out a writ of error to the criminal court of Cook county to bring into review the record of his conviction in said court upon the charge of bigamy. The record shows that when the plaintiff in error was arraigned upon said charge he entered a plea of not guilty. Afterwards, on January 31, 1911, he withdrew his plea of not guilty and entered a plea of guilty. The judgment of the court contains the following recital and order in regard to the plea of guilty: "And said defendant, by leave of court, now here withdraws his plea of not guilty, heretofore rendered to the indictment in this case, and for a plea thereto says that he is guilty, in manner and form, as charged therein, and he, being fully advised by the court of the effect in rendering said plea, he still persists therein, and the court orders said plea to be accepted and entered of record against the said defendant." On the fourth day of February, following the day that the judgment was entered, plaintiff in error entered a motion to vacate the sentence and judgment and for leave to withdraw his plea of guilty, which motion was overruled, to which plaintiff in error preserved an exception. A motion for a new trial was then made and overruled. The question presented for the consideration of this court is whether the trial court erred in denying the motion to vacate the judgment and to permit the plaintiff in error to withdraw his plea of guilty.

Upon the hearing of the motion to vacate in the criminal court plaintiff in error submitted three affidavits,—one made by himself, one by his mother and one by his grandmother. The affidavit of the plaintiff in error is as fol-

lows: "That he was arrested some time in November last on two charges,—one for adultery and one for bigamy; that he engaged a lawyer by the name of William Schreider; that the said lawyer took charge of the case and was paid a retainer in said case; that he relied entirely upon the advice of counsel and did everything that he told him to do; that the said lawyer said to this affiant that he had seen the State's attorney and talked with him, and that he told this affiant that if he would plead guilty to adultery the bigamy charge would be dropped. Thereupon, acting upon the advice of counsel, he did plead guilty to adultery before his honor Judge Going, when, as a matter of fact, he is now advised by counsel that he was not guilty of the charge; that the plea was entered solely for the purpose of carrying out the promise of his attorney, and, as the attorney told him, the promise of the State's attorney that the bigamy charge would be dropped. The said attorney even went so far as to say that the said attorney had talked with him about the case, and had agreed that he should get a divorce from the said Annie Meyers if there was any marriage at all contracted. This affiant further states that there was some kind of a ceremony performed, but he does not believe that it was a valid ceremony. At any rate, this affiant never cohabited with the said Annie Meyers and never lived with her as her husband; that at the time the ceremony took place the said Annie Meyers insisted upon it being performed, and threatened him that if he did not perform the ceremony, by implication and other conduct, that she would have him arrested, because she said that she was pregnant with child; that the said ceremony took place without lawful authority. This affiant further says that this is the first time he was ever arrested; that he is unaccustomed to court and court practices; that he did not want to do anything except as he was advised by counsel; that while he remained in jail, from November until the day of his trial, on the said bigamy charge, which occurred

on January 31, 1911, he was very seldom visited in jail by his attorney and only saw him about three or four times; that the said attorney said that he had everything arranged and that everything would be all right and the bigamy case would be dropped and stricken from the docket. Thereafter, on the day of the trial, the said attorney came rushing into the prisoner's room and said, 'You had better plead guilty; if you will plead guilty you will soon get out of it, and after you serve your sentence on the adultery conviction then this case will be dropped; then you will be entirely out of your trouble.' This affiant further says that when the case was called before your honor he did act upon the advice of his counsel, but he was so terrified and was so weak that he was almost unconscious of what was going on before him; that while the court said to him that he had the authority to send him to the penitentiary, still he did not understand the court would do it or the length of time he would or could send him there, and he did not realize the import of the court's declaration, as he was under the impression that the secret arrangement with the State's attorney, as he was informed by his attorney, would supplement or overrule the sentence of the court; that he believes that he has a good defense on the merits of the case, and if it had not been for his attorney acting as he did and in collusion with other people he would have a trial by the jury, and that when he pleaded guilty to bigamy he did it, not with the understanding he would be sent to the penitentiary, but that he would be free ultimately and allowed his liberty; that his counsel did not advise him that there was nothing else the court could do on a plea of guilty but to sentence him to the penitentiary, but, on the other hand, gave him to understand that the court had authority to save him from the penitentiary on a plea of guilty; that he did not fully and fairly understand the consequences of such plea and the waiver of rights thereunder. This affiant further says that he is the defendant

in this entitled cause and that he makes the foregoing affidavit for himself, and also says that the court did not disclose to him that the jury could do no more to him if it found adversely to him than the court would have to do if he plead guilty to the said charge of bigamy."

The affidavit of plaintiff in error's mother, Mrs. Helfrich, states that she employed Schreider to defend her son and paid him a large retainer fee, and that said Schreider told affiant several times that he had everything arranged so that by pleading guilty to the charge of adultery the charge of bigamy was to be dropped. She states that the plaintiff in error is twenty-two years of age; that he was married when only about nineteen years of age, and that he had never had anything to do with court proceedings before the present charges were brought against him.

Mrs. Hayes, the grandmother, testifies that she was in court at the time the plaintiff in error entered his plea of guilty; that she had been holding the plaintiff in error in her arms just before he was called to the bar of the court and that he was so terrified and bewildered that he did not know what he was doing, and that she could feel that when he was in her arms he was shaking like a man with palsy; that he could not say anything and was not able to articulate. She testifies that she asked his attorney why he did not have a jury trial, and he said that it was for Walker's interest.

There was no counter-affidavit submitted, and the foregoing statement is, in substance, the evidence introduced on the hearing of the motion.

Plaintiff in error insists that the record does not show that the court fully explained to the accused the consequence of entering a plea of guilty before receiving such plea and rendering judgment thereon. The bill of exceptions does not purport to show what was said to the plaintiff in error by the court at the time the plea of guilty was entered. The record simply shows that plaintiff in error

was "fully advised by the court of the effect of rendering said plea." It must be presumed, in support of this recital, that the court discharged its duty. (*Marx* v. *People,* 204 Ill. 248.) But independent, entirely, of this question, it was a matter within the sound legal discretion of the judge to vacate the judgment and permit the plaintiff in error to withdraw his plea of guilty and allow him to submit his case to a jury if it appeared that such plea had been entered unadvisedly or through a misapprehension, in consequence of the misrepresentation of his counsel. If, as he testifies in his affidavit, his attorney had assured him that he had arranged with the State's attorney that the bigamy charge was to be dropped, it is not unreasonable that the plaintiff in error would follow the advice of his counsel and enter a plea of guilty, expecting and believing that in some way he would not be imprisoned on said charge. In the case of *Krolage* v. *People,* 224 Ill. 456, this court, on page 460, said: "The withdrawal of the plea of guilty should not be denied in any case where it is evident that the ends of justice will be subserved by permitting the plea of not guilty in its stead. The least surprise or influence causing him to plead guilty when he had any defense at all should be sufficient cause to permit a change of the plea from guilty to not guilty." The case from which the quotation above is made is in some respects very similar to the one at bar, and the conviction was reversed because the court refused to permit the withdrawal of a plea of guilty. In our opinion there was an abuse of the discretion vested in the trial court in refusing to permit plaintiff in error to withdraw his plea of guilty.

The judgment of the criminal court of Cook county is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*