(No. 21939.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT CLAVEY, Plaintiff in Error.

*Opinion filed February 23, 1934.*

Stone, J., dissenting.
DeYoung, J., specially concurring.

George J. Dreiske, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Court-
ney, State's Attorney, and J. J. Neiger, (Edward E.
Wilson, J. Albert Woll, and Henry E. Seyfarth, of
counsel,) for the People.

Mr. Justice Shaw delivered the opinion of the court:

On October 31, 1930, the plaintiff in error (herein-
after referred to as the defendant,) was jointly indicted
with one Diettrich, in the criminal court of Cook county,
on the charge that he "unlawfully, feloniously, willfully

and maliciously did burn a certain church, to-wit, a certain frame building situated at and commonly known as No. 338 East Washington avenue, in the village of Glencoe, in the county of Cook and State of Illinois aforesaid, then and there the property of St. Paul African Methodist Episcopal Church Society, a corporation, contrary to the statute," etc. The indictment was endorsed, "indictment for arson."

The record shows that the cause, which was eventually tried before the court without a jury, was continued on thirty-five different occasions, and that there were four different hearings on which evidence was taken. The defendant Diettrich moved for a separate trial, which was allowed on June 15, 1931. The order granting it was vacated on January 6, 1932, and again entered on January 19, 1932. The hearing on defendant's case began on June 2, 1932, on plea of not guilty, and continued on June 3, 1932, when defendant Clavey entered a plea of guilty. After the cause had been continued, by agreement, first to June 6, 1932, then to June 10, 1932, and then to June 23, 1932, Diettrich withdrew his plea of not guilty and pleaded guilty. Thereafter the cause was continued six different times until the 16th of September, 1932, when a motion was made by the plaintiff in error for permission to withdraw his plea of guilty and to file a plea of not guilty. On the state of the record, at the time this motion was made the People had failed to prove the ownership of the property as laid in the indictment. The indictment alleged the building to be the property of the "St. Paul African Methodist Episcopal Church Society, a corporation," whereas the deed offered in evidence showed ownership of the property to be in the "African Methodist Episcopal Church of Glencoe, a religious corporation." There was no proof of incorporation, and such proof as had been attempted on the point indicated that the church was not a corporation. Proper objections were made on these points.

The affidavits in support of the motion for leave to withdraw the plea of guilty and substitute a plea of not guilty, and the record of the case, show that during the long period of time when the case was being continued, the defendant, his attorney, the State's attorney, the assistant State's attorney, the fire marshal and the court were all seeking for some proper and suitable means of disposing of the matter. It appears that on numerous occasions the presiding judge stated that this was not a proper case in which to commit the defendant to the penitentiary; that the evidence showed the defendant was drunk, and the court instructed the State's attorney to procure a malicious mischief indictment; that after the court had indicated his views of disposition of the case, the defendant, on advice of his counsel, who had informed him that the court would not sentence him to the penitentiary, did on June 3, 1932, withdraw his plea of not guilty and enter a plea of guilty. The affidavits show that a deputy fire marshal of the State of Illinois had requested the attorney for the defendant to assist the State in prosecuting the co-defendant, Diettrich, and that he had made definite promises of recommendation of immediate probation, and assurance that the same would be granted by the court if the defendant would be a "good witness;" that the defendant withdrew his plea of not guilty and entered a plea of guilty in reliance upon the various representations which were made to him by his own attorney, and, through said attorney, by the fire marshal and assistant State's attorney, and that as a direct result of changing his plea Diettrich also pleaded guilty; that the presiding judge attempted to carry out this arrangement and announced his decision that a penitentiary sentence should not be entered and directed the State's attorney to bring in a malicious mischief count; that the assistant State's attorney stated to the court that if the court would increase the bond and hold the man in jail for ninety days, probation thereafter would be agreeable to the State's attorney; that

the State fire marshal acquiesced in the court's proposed disposition of the case, and the court stated that several directors of the church had likewise acquiesced. The affidavits further state that the defense had matters worthy of the consideration of a jury; that the prosecution was relying upon an alleged confession of the defendant wherein it was recited that he was intoxicated at the time of the alleged commission of the offense, and that grave doubt worthy of the consideration of a jury existed as to whether or not the defendant had the capacity to commit the offense and form the necessary specific intent by reason of his condition of intoxication at the time of the fire. The affidavit of the attorney for the defendant, and of the defendant himself, stated that the attorney had communicated the promises and inducements offered by the State fire marshal to the defendant and that he changed his plea in reliance upon those representations. At the close of all of the evidence, and after overruling the motion for leave to withdraw the plea of guilty, the court entered an order finding "the said defendant, Robert F. Clavey, guilty of arson in manner and form as charged," and ordered "the said defendant, Robert F. Clavey, to be, and he hereby is, sentenced to the penitentiary of this State at Joliet for the crime of arson whereof he stands convicted, for a term of years not to exceed the maximum term fixed by statute for the crime whereof he stands convicted and * * * until discharged according to law, provided said term of imprisonment in said penitentiary shall not exceed the maximum term for the crime for which the said defendant was convicted and sentenced."

It appears that this case was tried by the court and all of the parties upon a theory that the indictment charged arson. The crime of arson, at common law, is a willful and malicious burning of a dwelling house, or out-house within the curtilage of a dwelling house of another person. (*People* v. *Covitz*, 262 Ill. 514.) This common law crime

no longer exists in Illinois, and we have in place thereof five different statutory provisions covering the intentional burning of property, only one of which is denominated by the term "arson." Section 13 of the Criminal Code of 1874, as amended in 1929, (Cahill's Stat. 1933, chap. 38, sec. 25, p. 990,) provides that anyone who willfully and maliciously sets fire to or burns certain buildings, including dwelling houses, etc., shall be guilty of arson and shall be punished by a term in the penitentiary of from one to twenty years. Section 14 provides a penalty of one to five years against any person who willfully and maliciously burns property for the purpose of defrauding an insurance company. This is not called arson in the definition of the crime in the statute. Section 16, under which this indictment was drawn, provides a penalty of not less than one nor more than ten years for anyone who willfully and maliciously sets fire to or burns certain named buildings, including churches. This is not described in the statute as being arson, and we have held that the crimes defined under sections 14, 15 and 16 of the act are not arson. (*People* v. *Farrell,* 349 Ill. 129; *Mai* v. *People,* 224 id. 414; *People* v. *Darr,* 255 id. 456; *People* v. *Brown,* 312 id. 63.) It is thus apparent that there is only one crime called arson in Illinois, and that is the one which is defined in section 13, and that the offense charged in this indictment is neither arson at common law nor under our statute.

It follows from what we have said that the judgment of the court is insufficient, indefinite and uncertain. It adjudges the defendant to be guilty of the crime of arson upon an indictment which does not charge arson and upon a plea of guilty of arson, which plea was a nullity. The sentence of the court requires that the defendant be imprisoned in the penitentiary "until discharged according to law, provided said term of imprisonment in said penitentiary shall not exceed the maximum term for the crime for which the said defendant was convicted and sentenced."

As pointed out above, if guilty of arson he could be detained in the penitentiary for a period of twenty years, whereas for the offense of burning a church he could not be detained beyond a period of ten years. In this state of the record it would be necessary for the warden at Joliet to make a judicial determination as to how long he might retain custody of the body of the defendant. This cannot be, and if it were not for the other considerations hereinafter mentioned it would in any event be necessary to reverse the cause for proper judgment and sentence. *People* v. *Wood,* 318 Ill. 388.

The record leads us to the conclusion that the defendant did not fully appreciate the nature of the charge against him and his right to apply for probation. The crime was not arson, as held by the trial court, and therefore not an exception in the probation statute. Furthermore, it is clear that the defendant, with good reason, expected some consideration from the court other than the imposing of the maximum sentence which the law might permit. It is true that the record shows that the court explained to him, in the words of the record, "the effect in rendering said plea," yet it is certain that there was a misapprehension. It is probable that he would not have entered this plea, nor would his counsel have recommended it, had it been explained to him that there was only one possible sentence which he could receive, and that would be the maximum sentence permitted by law. It is urged that the State fire marshal had no right to make any promise which would be binding on the court, which is, of course, true. That is not the purpose of our inquiry. What we are interested in is what the motive and understanding were which induced the defendant to enter the plea. Was he led to believe, and could he reasonably have understood, that the recommendations of the State fire marshal and the assistant State's attorney would have some weight in the matter? We must presume him, the same as all others,

to know the law, and it must be taken for granted that he and his attorney both knew that the promise of the State fire marshal would not be binding upon the court. The question, however, goes deeper than legal niceties—to the essential and underlying point as to the considerations which moved him to take the action which he took.

The State is sovereign, and it neither needs, nor can it accept, the benefit of any questionable or undue advantage over one of its citizens. Its procedure against an accused must be kept on such an ethical plane as will be consistent with its dignity and its power. When it appears that surprise or influence has caused an accused to plead guilty when he, in fact, has any defense at all, it is a sufficient reason to permit him to withdraw the plea of guilty and substitute one of not guilty. *People* v. *Walker*, 250 Ill. 427; *Krolage* v. *People*, 224 id. 456; *People* v. *Schraeberg*, 340 id. 620.

There is another error in the record which requires a reversal of the judgment. The indictment alleges that the building was the property of the "St. Paul African Methodist Episcopal Church Society, a corporation," whereas the deed offered in evidence shows the title to be in the "African Methodist Episcopal Church of Glencoe, a religious corporation." The indictment alleges the owner of the building to be a corporation, whereas the proof shows that it was not incorporated. The question of variance was duly raised on the trial of the case, but the objection was overruled by the court upon the theory that the allegations as to ownership and incorporation were surplusage and that the fact was immaterial.

Requiring certainty in an indictment and making a material variance between the indictment and the proof fatal to a conviction is not a mere empty form. It represents more than a technicality—it is a substantial right of the defendant to have the crime charged and proved with such certainty as to protect him in the future against double

jeopardy. In *People* v. *Smith*, 341 Ill. 649, we said: "In indictments for offenses against persons or property the name of the person injured must be stated, if known. The name so stated must be the real name of the person injured or the one by which he is usually known. The necessity for stating the name of the person injured is to enable the defendant to plead either a former acquittal or conviction in case of a second prosecution for the same offense.—*Willis* v. *People*, 1 Scam. 399; *Sykes* v. *People*, 132 Ill. 32; *Aldrich* v. *People*, 225 id. 610." It is also necessary that the name be proved as alleged. (*People* v. *Smith, supra; Aldrich* v. *People, supra.*) Proof of corporate existence was also necessary. In *People* v. *Struble*, 275 Ill. 162, we said: "It is not a technical rule of law but a substantial one, and universally so recognized, that when the offense is charged to have been committed against a corporation the charge is a material one and must be proved." To the same effect, see *Aldrich* v. *People, supra,* and *People* v. *Krittenbrink*, 269 Ill. 244. The rule remains the same even where the allegation is made with unnecessary particularity. *Sykes* v. *People, supra; Huggins* v. *People*, 135 Ill. 243.

For the errors indicated the judgment must be reversed, and since it affirmatively appears from the record that the ownership and incorporation cannot be proved as laid, the cause will not be remanded. *People* v. *Geister*, 289 Ill. 249; *People* v. *Tallmadge*, 328 id. 210.

*Judgment reversed.*

Mr. JUSTICE STONE, dissenting.

Mr. JUSTICE DEYOUNG, specially concurring: In my opinion the judgment should be reversed and the cause remanded, but I cannot assent to much that is said in the opinion.