## BERGEN v. UNITED STATES.

### No. 12859.

Circuit Court of Appeals, Eighth Circuit.

Oct. 25, 1944.

Rehearing Denied Nov. 10, 1944.

J. K. Murray, of Bismarck, N. D., for appellant.

P. W. Lanier, U. S. Atty., of Fargo, N. D. (Joseph P. Stevens, Asst. U. S. Atty., of Fargo, N. D., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The question on this appeal is whether there was an abuse of discretion on the part of the trial court in refusing the appellant's motion to permit him to withdraw his plea of guilty to an indictment charging him and six others with a conspiracy to defraud the United States. The motion was made within ten days after the entry of the plea and before imposition of sentence, as required by Rule 2(4) of the Rules of Practice and Procedure in Criminal Cases, 18 U.S.C.A. following section 688.

The indictment charged that appellant, Bergen, and his co-defendants conspired to corruptly administer that section of the National Bankruptcy Act commonly known as the Frazier-Lemke Act, 11 U.S.C.A. § 203. One of the defendants was the conciliation commissioner, appointed by the United States District Court for the District of North Dakota, to whom actions begun under the Act were referred for the hearings and orders authorized by the Act to be made by the conciliation commissioner in such proceedings. The other defendants were persons appointed to appraise the properties of the farmer-debtors. The indictment alleged that large numbers of North Dakota farmers were heavily indebted to the Federal Land Bank of St. Paul, Minnesota, and to the United States of America through its agencies, the Farm Credit Administration and the Farm Security Administration. It charged the defendants with entering into a scheme to defraud the United States by procuring farmers to institute proceedings for relief under the Frazier-Lemke Act, by corruptly appraising the properties of the farmer-debtors at less than their real value, by concealing the assets of such farmer-debtors by means of fraudulent conveyances and by the omission of assets from the schedules in bankruptcy. The overt acts charged were the employment by Bergen of an attorney to represent the farmers before the conciliation commissioner, the solicitation by him of farmers for filing the proceedings, the refusal by the conciliation commissioner to consider applications of farmers for relief under the Act presented to him except through other parties to the conspiracy, and the making of appraisals by the other defendants.

When Bergen was arraigned, the judge of the district court inquired if he understood that he had the right to be represented by counsel. Bergen replied in the affirmative. He was then asked by the court if he was familiar with the charge against him, and his answer again was in the affirmative. The court inquired of Bergen if he had examined the charge, and his answer was "Yes." In answer to further questions by the court Bergen stated that he waived the reading of the indictment. He was asked if he had decided what plea he wanted to enter, and his answer was "Yes." In response to the court's question, "What is your plea?" his answer was "Guilty." Bergen then said: "However, Your Honor, I would like to present a statement in my case to this Court for your information, and I would like to present a copy of it to the press, with the permission of the United States Commissioner, the United States Marshal—with their permission."

After receiving assurance from the defendant and from the district attorney that nothing in the statement referred to the cases against Bergen's co-defendants or other similar cases then pending, the court permitted one copy of the statement to be filed in the case. The court said: "I will, of course, want to examine it carefully before sentence is pronounced in any of the cases." At the time of Bergen's arraignment he was in custody. With his consent, the court deferred sentence until the following week. His plea of guilty was accepted without consideration by the court of the statement made in connection with it.

184

Following these proceedings the others charged in the indictment were tried. The conciliation commissioner and one of the appraisers were convicted. The other defendants were acquitted. After this trial and about one week after the entry of Bergen's plea of guilty, those convicted at the trial and Bergen appeared for sentence. In response to an inquiry by the court, an attorney appearing for Bergen advised the court that Bergen was not ready for sentence and that he was present to talk to the court about changing his plea. Bergen then said:

"I have belabored under a misapprehension of the law. I based my plea of guilty upon the statement that I submitted to this Court. I had reached the point where I thought that merely looking at a Frazier-Lemke case would convict one. I do not feel that I am guilty, and I have so said many times, of defrauding. I have not given any advice that is adverse to ethical business procedure, and I thought I was merely pleading guilty to having solicited cases or procured cases, which I had, and on that basis, I pleaded guilty. But I have had a talk with Mr. Murray, who is retained as my attorney, and I have given him all the facts that I could, and he assures me that I am not guilty, and while I had refused attorneys before he came because I had lost confidence in them, I have confidence in what he told me, and on that basis I ask to withdraw my plea of guilty and enter a plea of not guilty."

The court asked Bergen when he had changed his mind, and, in reply, he stated that he had been in doubt for some time, but that he had changed his mind definitely that day.

Further colloquy between the court and Bergen ensued. Bergen stated that he had employed counsel that morning, and, after discussing his case with counsel, he had changed his mind on being advised that he was not guilty of anything. He said that he was in doubt all along, and that he had stated at the time of his plea that he was not guilty of using the Frazier-Lemke Act for the purpose of fraud and misrepresentation, and that he thought one could become guilty by merely soliciting cases. The court inquired if Bergen's change in attitude had not been prompted by pressure brought upon him by other defendants in similar cases. Bergen replied that he had avoided pressure by others and tried to solve the situation entirely in his own

mind. He thought, when he pleaded guilty, that the statement he made would be the basis of the charge against him. The court then inquired if defendant had not told the United States Marshal that he was being subjected to pressure to change his plea and that he didn't want to offend others charged with the same or a similar offense. Defendant admitted that he had told the marshal that he didn't want to be bothered by others, that he had made up his mind, and that he thought his case was clean and he wouldn't have to bother with anybody else. The judge then stated that he had accidently come into possession of knowledge of conversations between the marshal and Bergen, and that he mentioned the matter so that the record might show that Bergen had changed his mind because of pressure brought by others, if that were the true situation. To this Bergen replied: "It is true, Your Honor, in this respect, that I felt I had merely pleaded guilty to soliciting cases * * *." He went on to say that he did not know until that morning that he had pleaded guilty to "so many points." He said he had merely glanced at the indictment, having obtained possession of it about five minutes before he pleaded guilty. He said it was now his understanding that he was subject to imprisonment in the penitentiary for two years on each overt act charged. The court assured Bergen that he was mistaken in this interpretation of the indictment, and asked him if all the recitals of the statement he filed with the court at the time of his plea of guilty were true. Bergen said that they were, and asked that, if the court could not grant his request for the withdrawal of his plea of guilty, his sentence be deferred for another day.

At this point the court overruled the motion to withdraw the plea of guilty. The court then asked Bergen his reason for wanting sentence deferred for a day. Bergen replied that he wanted another day to think it over, that he wanted to get the indictment and read it over himself in order to be satisfied about his plea. He said that he was confused about the plea and what it might result in. He said that he had undertaken his work with the farmers in good faith, and that he had tried to be honest and ethical about it. To these statements the court replied that he did not think defendant was confused; that his attitude, demeanour, and general conduct in court showed a much higher than average intelligence and understanding; and that his

statement submitted to the court did not indicate any confusion as to the question involved. The court expressed the opinion that Bergen was not laboring under any serious confusion as to the real issues in the case; that any confusion in his mind was probably due to the events of that morning. Sentence was then imposed.

Bergen's statement, filed at the time of his plea, contained a detailed version of his actions in connection with the farmer-debtor proceedings filed in the District Court of North Dakota and heard by the convicted conciliation commissioner. He said that in the early fall of 1941 he paid a visit to this conciliation commissioner, who was his cousin. The commissioner told him that there would be a large number of Frazier-Lemke cases in that county as soon as the farmers could get money to finance them; that one Townley had spent about two weeks in the county soliciting cases, but had left because the farmers had no money with which to start them; that Townley had made an agreement with Tannas, a local attorney, to handle his cases for $50 each. The commissioner stated that he wished to get a large number of cases so he could pay off the delinquent taxes on his home, and suggested that Bergen take up the work which Townley had abandoned. Bergen expressed his willingness to undertake the work if he could hire an attorney to handle the cases for a reasonable compensation. His negotiations with Tannas to this effect were successful. Tannas agreed to prosecute the cases which Bergen might direct to him.

After the completion of this arrangement, Bergen, armed with tax lists and abstracts of title showing mortgages on farms in the county in which he worked, began the solicitation of farmers to file proceedings under the Frazier-Lemke Act. According to his statement, Bergen, after consulting a farmer, made a rough estimate of the farmer's assets and liabilities. On this information he would advise the farmer whether he could secure worth-while relief by proceedings under the Frazier-Lemke Act. If the farmer took his advice, Bergen would direct him or take him to the office of Tannas. Bergen thereafter had nothing to do with such proceedings as were instituted, and took no part in the preparation of the petition or of the farmer's schedules of assets and liabilities.

Bergen admitted that for a short time he joined forces with a Mr. Semingson,

one of the appraisers charged in the indictment and subsequently convicted. Their efforts, however, were not successful, and they parted company. Eventually Tannas and Bergen disagreed over the amount of the fee which Tannas was to receive for each case. Tannas thought that he could get more cases than he could handle without the assistance of Bergen and wished to dispense with his services.

During the course of Bergen's activities a number of petitioners under the Frazier-Lemke Act organized an association for protection against "unscrupulous creditors." Bergen stated that he had nothing to do with the organization of this association; that he attended a meeting because he chanced to hear that Congressman Lemke would be present to address it, and he wished to consult Mr. Lemke. On that occasion Bergen made a short address to the meeting. He advised no one to join it or to contribute to it unless it was certainly known for what purpose the contribution was to be used. He advised the organization not to contribute funds to carry on the Rait case (a pending proceeding under the Frazier-Lemke Act), because he thought the case was without merit and would result in hindering the proper operation of the Act. He thought that the conciliation commissioner had appraised the assets involved in the Rait case below the true value, and that his findings showed that they were the result of prejudice.

About this time a county attorney in North Dakota advised Bergen that Tannas would get into trouble by taking the cases which Bergen solicited. Bergen conveyed this information to Tannas, who, after investigation, advised Bergen that it was proper for Bergen to solicit the cases, but that Tannas could no longer collect Bergen's fees, that it would not be safe for Tannas to pay any money to Bergen. Later, one of the farmers whom Bergen had taken to Tannas' office was arrested on a charge of concealing assets. Bergen stated that his investigation of this complaint revealed that Tannas had been careless in preparing the schedules of the bankrupt's property. At this stage he severed his connection with Tannas and employed other attorneys. Bergen described his operations as follows:

"I merely went out or met prospective petitioners and discussed roughly their cases. If I saw that they had meritorious cases, I obtained a bonded abstract covering all

their property and delivered same to the attorney. When I brought the petitioner to the attorney, he had merely made a synopsis of his case and in most cases this was done verbally. Many of them, in fact most of them, did not know how much they really owed until an abstract was obtained. When the petitioner was brought to the attorney my services and responsibilities ceased * * *. The attorney and the petitioner shared the responsibility * * *."

He said that all he knew about the Frazier-Lemke Act was the information received from the conciliation commissioner, the lawyers he employed, and Congressman Lemke.

The statement contains the following assertions:

"I deny that I at any time conspired to defraud any creditor in any illegal or unethical manner. I felt proud of my fairness and satisfied with what the law would do for my petitioners 'if it was allowed to properly function."

"I admit soliciting cases. I would rather describe my work as instructing the farmers as to what they could hope to accomplish under the law. I did not at any time guarantee results nor did I picture them too rosy. * * *"

"It is true that many people gave me names of prospects including Mr. Braatelien (the conciliation commissioner) * * *. At no time did I suggest transfer of property just before filing, but I was often asked about it. * * * I used my own judgment as to merits in each case and gave no instructions to any client to leave anything out of the schedules but to put the true picture before the attorney and let him share responsibility with you * * *. That was why an attorney was hired and paid the principal fee in these cases."

"If merely soliciting cases is unlawful, then I must plead guilty and my only defense is counsel advice."

"If I have erred in interpreting the law, I have done so innocently and according to information from my attorneys and in that case also I must plead counsel defense."

"I am not guilty of omissions in schedules, I did not examine them, did not stay in the room to help with listings, did not interrogate nor direct any of the work from the time the attorney took charge and the petition was started. It was the attorney's business to make the petitions clean and legal in every respect."

"I did not pay Mr. Braatelien (the conciliation commissioner) any money on any case. I stayed at his house as I otherwise would have done if in Crosby."

Bergen continued in his statement to admit that he was advised by the second attorney he employed that the Federal authorities were looking for him; that his cousin, the conciliation commissioner, and others would be, or had been, indicted; that he, Bergen, had better leave the county; that the authorities would probably not consider the charge against him important enough to justify bringing him back for trial. Bergen took his advice and went to California. While there he learned that he had been indicted. He did not return to face the charge against him because he did not think he had done anything to cause the authorities to take him back to North Dakota, and because he did not want to testify against his cousin, knowing that he would have to tell the truth whether or not it hurt his co-defendant. He continued to say that he frequently criticized the appraisements made by appraisers appointed by the conciliation commissioner, and he (Bergen) suggested to the commissioner that he prepare a comprehensive and thorough form to be used by the appraisers. He said that he criticized the method of making appraisements to the conciliation commissioner, to Tannas, and to the petitioners themselves. He thought the appraisers were generally competent and honest men, but that they were not instructed, and did not understand the duties which they were to perform. On one occasion he was invited by the appraisers to accompany them for the appraisal of the property. When they had completed their report they showed it to Bergen, and as a result of his criticism the appraisal was raised.

In the absence of a controlling statute or rule of court, the granting or denial of a motion to withdraw a plea of guilty is within the discretion of the trial court and is not a matter of right. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009; Gleckman v. United States, 8 Cir., 16 F.2d 670; Scheff v. United States, 8 Cir., 33 F.2d 263; Rachel v. United States, 8 Cir., 61 F.2d 360; Jackson v. United States, 8 Cir., 131 F.2d 606, 609; Ward v. United States, 6 Cir., 116 F.2d 135; United States v. Fox, 3 Cir., 130 F.2d 56, certiorari denied 317 U.S. 666, 63 S.Ct. 74, 87 L.Ed. 535; Tomlinson

v. United States, 68 App.D.C. 106, 93 F.2d 652, 114 A.L.R. 1315, certiorari denied 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1102; Roberto v. United States, 7 Cir., 60 F.2d 774. An abuse of the court's discretion in refusing to allow a withdrawal of a plea of guilty is reversible error, but a mere showing of the denial of the motion is not sufficient. It is necessary that the accused show in support of his motion that the plea of guilty "should not be allowed to stand against him because of some reason existing when it was entered, but for which he would not have entered the plea, and that reason must amount to a fraud or an imposition upon him, or a misapprehension of his legal right." Rachel v. United States, supra [61 F.2d 362]. It has been held that the principles on which the motion to withdraw a plea of guilty may be granted or denied remain unchanged by Rule 2 (4) of the Rules of Practice and Procedure in Criminal Cases providing that the motion shall be made within ten days after entry of plea and before sentence is imposed. Farnsworth v. Zerbst, 5 Cir., 98 F. 2d 541, 543.

 We think it may be gathered from all of the cases that an accused is entitled to withdraw a plea of guilty if it fairly appears that he was in ignorance of his right and of the consequence of his act, or if it appears that the plea was made under some mistake or misapprehension. The withdrawal should not be denied where a proper showing for its allowance is made, merely because the defendant on a trial might or probably would be found guilty. While the burden is on the accused to show cause for the change of his plea, the court's discretion should be exercised liberally, so as to promote the ends of justice and to safeguard the life and liberty of the accused, especially where the defendant is without the advice of counsel and his motion is seasonably made. And, in any case, the motion should not be denied where it is evident that the ends of justice would best be served by granting it.

 An intelligent and full understanding by the accused of the charge against him is a first requirement of due process. Ammons v. King, 8 Cir., 133 F.2d 270, 272; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. On a motion by an accused without counsel for the withdrawal of a plea of guilty on the ground of want of comprehension of the charge, the rights of the accused and the duties

upon the trial court are not unlike their respective rights and duties when the question is whether an accused has competently waived his right to the assistance of counsel. "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." Johnson v. Zerbst, 304 U. S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357. So, while the accused in the present case had the right, without the advice of counsel, to enter a plea of guilty to the charge against him, it rested upon the trial court, when the application for withdrawal of the plea was seasonably made, to determine whether, in the light of all pertinent evidence, the plea of guilty had been made with intelligence and comprehension. Circumstances important for consideration are the nature of the charge against the accused, his apparent intelligence and ability to fully comprehend the charges against him, the gravity of the offense charged, the timeliness of the motion to withdraw the plea, and the fact that the accused before entering his plea did not have the advice of counsel.

 The statute under which the accused was indicted, § 37 of the Criminal Code; Revised Statutes, § 5440, 18 U.S.C. A. § 88, provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined 'not more than $10,000, or imprisoned not more than two years, or both."

An essential element of the crime denounced by the statute is an intent to commit a crime against the United States or to defraud the United States. It is not necessary to a conviction of a party to the conspiracy that he perform any overt act, or that the conspiracy succeed. Conviction may rest on proof of the doing of any

overt act by any of his co-conspirators for the purpose of effecting the object of the conspiracy, and it is not necessary to conviction that the overt act in itself be one prohibited by law. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; Troutman v. United States, 10 Cir., 100 F.2d 628; Kramer v. United States, 245 U.S. 478, 38 S.Ct. 168, 62 L.Ed. 413. Bergen's plea of guilty was an admission that he had entered into the conspiracy with some one or all of his co-defendants to commit a crime against the United States or to defraud the United States by means of a corrupt administration of the Frazier-Lemke Act, and that he or one of his co-defendants had committed one of the overt acts charged in the indictment, or some other overt act, for the purpose of effecting the object of the conspiracy. The plea was a waiver of fundamental rights, against which every reasonable presumption is indulged, Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680.

The written statement which Bergen gave to the trial judge at the very time he entered his plea must be considered as much a part of his plea as was the word "guilty." The statement was offered for the information of the trial court. It was given in explanation and in qualification of the plea made in connection with it. We think it shows such a lack of understanding of the charge against him that his plea of guilty should not be allowed to stand, when there is considered with it his statements in support of his motion, together with the fact that at the time of his plea he was in custody and was without the advice of counsel. The indictment in this case was long and involved. It contained an exposition of the Frazier-Lemke Act, the rights of petitioners and creditors under the Act, and the duties of the conciliation commissioner. It was drawn with all the formality usual in such cases. Bergen's name was mentioned as one of the conspirators in the beginning of the indictment, and does not appear again in the instrument until the specification of overt acts. In those acts, set out in separate paragraphs, Bergen is charged with employing Tannas as an attorney and with soliciting cases. His statement was that he had seen the indictment only five minutes before his arraignment. It is not unreasonable to suppose that, in the circumstances stated, the accused, without the advice of counsel, should have reached the hasty and erroneous conclusion that he was charged only with soliciting cases and the employment of counsel, and that these acts constituted a crime, without regard to his participation in the conspiracy, which his statement denied, without regard to his criminal intent, also explicitly denied, and even in the absence of any knowledge on his part of a conspiracy between any of his co-defendants. It is not to be supposed that a layman, unless advised by counsel, would understand that he might be guilty of the charge in the indictment on proof that he was a party to the conspiracy and that one of his co-conspirators committed one of the overt acts charged, while he committed none. That he was a person of more than ordinary intelligence was not, if true, conclusive on the question. Compare Glasser v. United States, supra. Conceding that the trial court's statement, made after the motion to withdraw the plea had been denied and in response to the accused's request to have the sentence deferred for another day, to the effect that, in his opinion, the accused was not confused as to the charge against him, was a finding by the court on the issue raised by the motion, we think it is not supported by the evidence in the record. The court was clearly influenced in his conclusion by information which had reached him of conversations between the accused and the marshal which gave support to the idea that the accused had changed his mind by reason of influence brought to bear upon him by other defendants in similar cases pending in the court. Whether the court received this information directly from the marshal or by hearsay through others does not appear. In any event, the marshal was not called to testify, and the accused denied the interpretation placed upon the supposed conversations by the court. Moreover, the question here is not the probable guilt of the accused nor what caused him to change his mind, but whether, at the time of the entry of his plea, he had the requisite understanding of the charges against him. If he did not, the fact that third parties, for motives of their own, by explanation or influence were able to show him his error or induce him to change his plea is of no significance.

The judgment of the district court is reversed, and the cause is remanded for further proceedings in conformity with this opinion.