**UNITED STATES v. PARRINO.**

No. 104, Docket 22858.

United States Court of Appeals
Second Circuit.

Argued Feb. 1 and 2, 1954.

Decided April 26, 1954.

Rehearing Denied May 25, 1954.

---

3. Rest. Contracts, § 38.

Vine H. Smith, Brooklyn, N. Y., for appellant.

J. Edward Lumbard, U. S. Atty., New York City (Richard Owen, Asst. U. S. Atty., New York City, of counsel), for respondent.

Before CLARK, FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This case has previously been twice before this court. The first appeal was from a conviction under 18 U.S.C.A. § 1202 which we ordered reversed in United States v. Parrino, 2 Cir., 180 F.2d 613. Thereafter, some eighteen months after the reversal, the defendant (as we shall hereafter designate the appellant) was again presented to the court below and pleaded guilty to the second count of the indictment which charged a conspiracy to kidnap—an offense denounced by Section 1201(c) of the Code—whereupon the first count, charging commission of the substantive offense denounced by Section 1201(a), was dismissed with the consent of the United States Attorney. A sentence of imprisonment for two years was then imposed and the defendant forthwith entered on service of this sentence. Some seven months later, while the defendant was still in confinement, in his behalf a motion was made by his attorney "to vacate or correct the sentence." This motion was denied by the trial court by an order which, on appeal, this court affirmed, United States v. Parrino, 2 Cir., 203 F.2d 284, 287. The opinion of affirmance, however, at its conclusion stressed the view that "nothing we say is to be taken as bearing on the question whether Parrino may not upon another record move to withdraw his plea under Rule 32(d)." Agreeable to this suggestion defendant filed the motion which after denial by the trial judge is now before us on appeal.

This motion, invoking Rule 32(d) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., seeks to vacate the judgment of conviction and to permit the defendant to withdraw his prior plea of guilty (on the strength of which a sentence of two years was imposed which

now has been fully served) on the ground that he pleaded guilty only in reliance on the assurance of his counsel at the time that the plea would not have effect of subjecting him to deportation, and that now, notwithstanding that assurance, a deportation proceeding has been insituted against him, the validity of which depends upon the conviction which in turn depended solely upon his plea of guilty. Thus is presented the question whether on the underlying record it would constitute "manifest injustice" within the purview of Rule 32(d) to hold him to his plea and leave the judgment of conviction undisturbed.

Before proceeding to discuss this question we should state that the record on this appeal amply supports the finding below that in fact [1] before changing his plea the defendant was indeed informed by the lawyer then representing him that a plea of guilty would not subject him to deportation. The pending motion is supported in that respect not only by affidavits of the defendant and his wife but also by the lawyer himself. And there is no dispute that this information, doubtless innocently made, was erroneous. Although there was no express finding by the court below that the defendant acted in reasonable reliance on this erroneous information, for purposes of this opinion we assume that that was so.

■■ But even so, we think the order should be affirmed. Generally in criminal cases, the defendant's surprise as to the severity of sentence imposed after a plea of guilty, standing alone, is not such manifest injustice as to require vacation of the judgment and permission to withdraw a plea of guilty.[2] True, when surprise stems from a misunderstanding, reasonably entertained, of remarks by the Judge himself, as in United States v. Lias, 4 Cir., 173 F.2d 685, or from assurances by the United States Attorney, it may be ground for post-conviction relief.[3] But surprise, as in the instant case, which results from erroneous information received from the defendant's own attorney, at least without a clear showing of unprofessional conduct, is not enough.[4]

Moreover, here the subject-matter of the claimed surprise was not the severity of the sentence directly flowing from the judgment but a collateral consequence thereof, namely, deportability. This is a liability which may, and in this case does, depend on a conviction of crime. But it is nonetheless a collateral consequence of conviction. It is true that many statements in judicial opinions and by text-writers may be found—and the appellant here cites several such—to the general effect that a defendant should not be holden to a plea of guilty made without an understanding of the consequences. But neither the generalities found in the texts nor the facts underlying such judicial opinions suggest that the authors of such statements meant to imply that the finality of a conviction on a plea

---

1. This fact was not established by the record underlying the former appeal which the court dealt with in 203 F.2d 284.

2. United States v. Norstrand Corp., 2 Cir., 168 F.2d 481; United States v. Weese, 2 Cir., 145 F.2d 135; United States v. Colonna, 3 Cir., 142 F.2d 210; United States v. Denniston, 2 Cir., 89 F.2d 696, 110 A.L.R. 1296, certiorari denied 301 U.S. 709, 57 S.Ct. 943, 81 L.Ed. 1362. See also Williams v. United States, 5 Cir., 192 F.2d 39.

3. United States v. Weese, supra, note (2); United States v. Sehon Chinn, D.C.S.D. W.Va., 1947, 74 F.Supp. 189, affirmed, 4 Cir., 163 F.2d 876.

4. United States v. Weese, supra, note (3); United States v. Sehon Chinn, supra, note (3); Ridgeway v. United States, 6 Cir., 205 F.2d 680. But see Futterman v. United States, 91 U.S.App.D.C. 331, 202 F.2d 185; United States v. Shneer, 3 Cir., 194 F.2d 598. Any notion implicit in these cases that the Court guarantees the accuracy of information given by a member of its Bar to a client-defendant is obviously subject to the qualification that the Court represents not that members of its Bar are infallible but, at most, that they will function with due regard to their professional obligations.

of guilty depended upon a contemporaneous realization by the defendant of the collateral consequences thereof. Certainly, the appellant fails to cite a single case so holding.[5] And research of our own fails to disclose a case even intimating a rule of such breadth.

Doubtless there may frequently arise tax evasion cases in which after conviction on a plea of guilty the defendant is unpleasantly surprised when, confronted with a civil action for the recovery of the evaded taxes, he finds a defense foreclosed by his plea in the criminal cases. And after pleading guilty to an offense which, though of small dimensions, is classified as a felony, a defendant may be shocked to find that he has lost his civil rights,—or that, after his conviction has faded into the past, he is faced with loss of his employment because he can only answer in the affirmative some questionnaire demanding to know if he has ever been convicted of a felony. The writer of this opinion, during his tenure on the trial bench, was more than once consulted by young men, duly convicted on a plea of guilty to a comparatively small offense, who were distressed to find that a later consequence of their plea was ineligibility for enlistment in the armed services. We think it plainly unsound to hold, as now in principle we are urged to hold, that such defendants are subjected to manifest injustice, if held to their plea, merely because they did not understand or foresee such collateral consequences. We find no case which even looks in that direction,[6] and the absence of cases expressly rejecting such doctrine

we attribute to the absence of a rule so palpably unsound.

■ With the defendant's principal contention thus disposed of, we find little merit left in the appeal. We do not overlook the companion contention that the defendant, if he had elected to stand trial, might have escaped conviction because of the Statute of Limitations. That defense addressed to the merits, was waived by his plea of guilty. And utterly no grounds appear in the record to support a contention that the waiver here was other than deliberate and intentional. As to this there is not even assertion of erroneous advice received by the defendant from his lawyer. Likewise, as to the defendant's assertion that notwithstanding his plea of guilty he was not in fact guilty.

We do not fail to recognize the terrific impact on the defendant's life and family of the collateral consequence of deportation. But deportability is determined by the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1102 et seq. And even if we felt that the inflexibility [7] of that Act was unduly harsh in its application to this particular defendant or to others, we may not properly let sympathy, thus engendered, by intrusion into the field of criminal administration disturb the finality of criminal process and thus undermine effective law enforcement.

Order affirmed.

FRANK, Circuit Judge (dissenting).

After defendant's first conviction and a sentence of more than a year for a

---

5. In Bergen v. United States, 8 Cir., 145 F.2d 181, cited by the appellant, post-conviction relief was afforded to a defendant who, without counsel, had pleaded guilty to a conspiracy charge. The relief was granted only on a showing, which included a written statement furnished to the Court when the plea was entered, that the defendant's plea was based on his assumption that his conceded commission of an act which in the indictment, hastily read, was alleged as an overt act, was enough to constitute guilt of conspiracy.

6. Neither United States v. Shneer nor Futterman v. United States, cited in footnote (4), involved misrepresentations by counsel as to the effect of the plea on collateral proceedings.

7. Notwithstanding the apparent inflexibility of many provisions of that Act, Section 244(a), 8 U.S.C.A. § 1254(a), provides for suspension of deportation at the discretion of the Attorney General for aliens eligible therefor by the terms of that Section. Whether the defendant here is thus eligible under Section 244(a) (5) is not a question for our determination.

crime involving moral turpitude, the government, pursuant to the deportation statute,[1] began proceedings to deport him on the basis of that conviction. When we reversed that decision and remanded for a new trial,[2] the government of course abandoned those deportation proceedings. Defendant subsequently pleaded guilty, relying on the clear assurance of his lawyer[3] that no deportation could be founded upon his conviction. To defendant's surprise, new deportation proceedings were begun precisely on that foundation.[4] It is that natural and reasonable surprise on which he rests his motion to have the judgment of conviction vacated and to allow him to withdraw his plea, substituting a plea of not guilty, on which he is ready to go to trial.

On defendant's last appeal—203 F.2d 284, 286—from an order dismissing a motion made under 28 U.S.C. § 2255 to vacate the judgment of conviction, we said (per Learned Hand, J.): "Even though he did not know that his plea would result in deportation, it would not result in 'manifest injustice' to hold him to it, if in fact Rozen was not 'liberated unharmed,' and nowhere in the record before us had Parrino said that he was not." And we concluded that opinion with the statement, "Nothing we say is to be taken as bearing on the question whether Parrino may not upon another record move to withdraw his plea under Rule 32(d)." The new record before us on the present appeal contains an affidavit by the defendant which, in effect, states that Rozen was "liberated unharmed";[5] and for purposes of this appeal we must assume that sworn statement to be true. Accordingly, in the light of our previous opinion, the sole issue here would seem to be whether defendant was misled into the belief that his plea would not result in deportation.

The defendant before he pleaded guilty was primarily concerned, not with the length of the jail sentence that might be imposed, but with the question uppermost in his mind, whether as a consequence of being again sentenced, he could be deported. As previously noted, he addressed this question to his lawyer, a former Commissioner of Immigration, who unequivocally answered No. But for that answer, he would not have entered his plea of guilty which he now seeks to withdraw.[6]

1. 8 U.S.C. § 155 as it then stood. It provided for deportation of an alien sentenced for one year or more because of a conviction of a crime involving moral turpitude.

2. 2 Cir., 180 F.2d 613.

3. Not the lawyer now representing him.

4. They will succeed, now that my colleagues have affirmed the denial of defendant's motion.

5. In his affidavit, defendant states: "On the first trial of this case, I pleaded not guilty and testified in my own behalf. The testimony that I then gave was true." The record of the first trial shows that defendant then testified that Rozen had not been harmed.

6. The lawyer's affidavit states: "Both the defendant, Liberale Parrino, and Mrs. Parrino, his wife, had asked me prior to the entry of the plea of guilty whether the withdrawal of his plea of not guilty and entering the plea of guilty to the conspiracy count would enable the Government to bring a deportation proceeding against the defendant. I advised them that it would not. It was my opinion at that time that the withdrawal of the not guilty plea and substitution of a plea of guilty to the conspiracy count would not warrant or aid the Government in an effort to have the defendant deported, upon the information which I then had. I have not since briefed the question but I have been informed that such a proceeding has been brought by the United States Immigration Authorities against said defendant and that such proceeding is now pending. There is, I believe, no doubt that when the defendant withdrew his plea of not guilty and entered his plea of guilty, he was satisfied that his so doing would not justify or facilitate a deportation proceeding against him."

On the latest previous appeal, we noted that "there is no evidence that" the defendant "could not understand English"; 203 F.2d at 285. This had a bearing on the fact that, immediately after defendant pleaded guilty, the prosecutor said in court in defendant's presence that a sentence of more than a year would result

My colleagues say that to prevent "manifest injustice," such permission to withdraw a guilty plea must be granted if a defendant's surprise related to the length of his sentence and stemmed from defendant's reasonable misunderstanding of remarks made by the judge or by the prosecutor. But my colleagues hold (a) that surprise as to the grave consequences of a sentence—here deportation—does not have the same effect; and that, in any event, (b) it does not suffice that the surprise was induced by the advice of the defendant's own lawyer—even when, as here, that advice was so thoroughly wrong as, in itself, to disclose unmistakably glaring incompetence on the part of that lawyer. I disagree as to both (a) and (b). I shall discuss them in turn.

1. Deportation, while not literally constituting criminal punishment, may have far more dire effects on this defendant than his sentence of imprisonment for two years. For all practical purposes, the court sentenced him to serve (a) two years in jail and (b) the rest of his life in exile. For the Supreme Court has said that "deportation is a drastic measure, at times the equivalent of banishment or exile" and "is a penalty." [7] Mr. Justice Jackson has described it as "a life sentence of banishment".[8] I cannot believe that no "manifest injustice" exists merely because the sentence of banishment for life was not imposed directly by the judge.

It has been said that (what my colleagues term) "collateral consequences," if of importance, constitute such injustice.[9] My colleagues dispose of those statements as dicta. I am not sure of the propriety of that characterization. But this is clear: The most my colleagues can show is that there are no precedents, on this point, adverse to defendant. I think we should not create one.

in defendant's deportation. Defendant, in his affidavit filed with the motion now before us, stated: "No mention was made of deportation by the prosecutor prior to the entry of my plea of guilty, nor at the time when that plea was entered. No mention whatever was made by him of a deportation proceeding until I actually appeared before the court, on December 13, 1951, for sentence. My understanding of English was poor, as the trial record will show. I heard only a part and understood less of what was said, after my plea of guilty was entered, by the prosecuting attorney in the conversation between him and the court and my attorney. Moreover, I had no chance to inquire further as to the matter of deportation because, immediately after sentence was imposed and without my having a further opportunity to speak to my attorney or my wife, I was taken from the courthouse to the Federal Detention Headquarters on West Street, New York, and transferred within twenty-four hours to prison here at Atlanta. I have ever since been and now am confined in the United States Penitentiary here." His then attorney says in his affidavit: "I was present in court, as the record will show, at the time when the defendant, Liberale Parrino, appeared before this court on December 13, 1951, and was sentenced to a further term of imprisonment for two years, which, as I am informed and believe, he is now serving. I did not confer, and as I recall, I had no opportunity to confer with the defendant subsequently to the imposition of that sentence. It is my recollection that immediately after he was sentenced, he was taken from the courtroom, in custody by the United States Marshal, or one of his deputies, and that he was promptly thereafter removed to the United States Detention Headquarters at West and 11th Streets, New York City. I am informed that he was almost immediately thereafter transferred from Detention Headquarters to the Federal Penitentiary at Atlanta, Georgia."

Cf. People v. Walker, 250 Ill. 427, 430, 95 N.E. 475; People v. Nitti, 312 Ill. 73, 143 N.E. 448.

7. Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433; Jordan v. De George, 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886.

8. Jordan v. De George, 341 U.S. at page 232, 71 S.Ct. at page 708 (dissenting opinion).

9. See, e. g., Bergen v. United States, 8 Cir., 145 F.2d 181, 187; United States v. Lias, 4 Cir., 173 F.2d 685; cf. Williams v. United States, 5 Cir., 192 F.2d 39.

2. This is not a case of collateral attack on a judgment of conviction by way of habeas corpus or the like. In such cases, some (not all) courts have held there is no lack of due process because of defendant's counsel's gross incompetence, if his counsel was of defendant's choosing.[10] But here the issue is not one of unconstitutionality. The issue is this: On a motion to vacate a conviction and withdraw a guilty plea, in order to permit defendant to go to trial, does the fact that the plea resulted from the grossly erroneous advice to the defendant by his own lawyer render it "manifestly unjust" to leave the consequent conviction standing? Several courts have held that it does—and (contrary to my colleagues' suggestion) without any showing that the lawyer was guilty of what my colleagues call "unprofessional conduct" (which I assume means conduct justifying disbarment). See, e. g., United States v. Shneer, 3 Cir., 194 F.2d 598, 601, and the ensuing decision allowing withdrawal of the plea, United States v. Shneer, D.C.Pa. 105 F.Supp. 883; People v. Walker, 250 Ill. 427, 432, 95 N.E. 475; Abraham v. State, 228 Ind. 179, 91 N.E. 2d 358; State v. Casaras, 104 Mont. 404, 66 P.2d 774. The state cases are apposite, since Rule 32(d) merely restates the "common law" doctrine.[11]

In cases where a defendant on appeal from a conviction asks reversal on the ground that his lawyer made a mistake during the trial, many courts have denied relief unless the mistake was magnificent and clearly prejudiced defendant. Those courts in such cases seem to have felt (1) that what might seem to be a mistake, was part of the lawyer's deliberate tactics, or (2) that, in the heat of trial, some "errors of judgment" on the part of counsel, when under such pressure, are so likely often to occur that they should not invalidate a conviction. But here the lawyer's mistake did not occur during a trial; he was under no pressure whatever; there was no need for haste. And his error cannot conceivably be described as one involving merely "bad judgment."

The courts (as I have said) do reverse a conviction on appeal when defendant's counsel was hopelessly incompetent and the incompetence seriously prejudiced defendant. So, e. g., where counsel was unfamiliar with the rules of evidence,[12] or did not know that "he could procure witnesses and have forcible process to obtain them in defendant's behalf." [13]

That a lawyer who had served as a Commissioner of Immigration, even if he had been asked for a curbstone opinion only, should give advice flatly contrary to the deportation statute would be surprising enough. But when, with ample time to examine the statute, and a Supreme Court decision sustaining its validity,[14] this lawyer did not do so and recklessly gave completely wrong advice, he was, beyond any possible doubt, egregiously derelict in the discharge of his duty to his client. Surely the courts have a considerable responsibility for the conduct of lawyers whom they admit to practice and whom they thereby invest with power to counsel laymen. To be sure, as my colleagues say, a court does not represent "that the members of its bar are infallible." But it does, I think, represent that they will not reck-

---

10. See the several opinions in United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, citing cases both ways. See also Achtien v. Dowd, 7 Cir., 117 F.2d 989, 993, as against Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 967.

11. Bergen v. United States, 8 Cir., 145 F. 2d 181, 187.

12. People v. Schulman, 299 Ill. 125, 128, 132 N.E. 530, 24 A.L.R. 1022; People v. Nitti, 312 Ill. 73, 84, 99, 143 N.E. 448.

13. Sanchez v. State, 199 Ind. 235, 243, 157 N.E. 1.
    See also, e. g., Lloyd v. State, 15 Okl.Cr. 130, 175 P. 374; People v. Gardiner, 303 Ill. 204, 207, 135 N.E. 422.

14. The lawyer's advice was given and the plea of guilty was entered on October 30, 1951; on May 7, 1951—five months previous—the Supreme Court, in Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, had held that the statutory provision was not unconstitutional for vagueness.

lessly fail to read a statute before answering a single simple legal question. What is the sense of the constitutional requirement that defendant have counsel before pleading guilty,[15] if the counsel be utterly without legal competence to guide his client? When a lawyer gives his client an erroneous opinion on a question the correct answer to which, by no stretch of the imagination, could be considered doubtful, and the client, relying on that opinion, enters a plea of guilty which will disastrously affect his future life, it is hard to understand how it can be maintained that "manifest injustice" has not occurred. If not, I wonder how manifest the injustice must be.

In People v. Nitti, 312 Ill. 73, 89, 143 N.E. 448, 454, the court said: "At the time the attorney appeared for these defendants he held a license from this court which certified to the public that he was competent to properly represent any client who might employ him, and any person employing him had a right to rely upon that certificate", and said that it must "take into consideration the gross incompetency and stupidity of counsel * * *." Here defendant's counsel held a "license" from the federal district court, and his conduct displayed "gross incompetence and stupidity." In Schmittler v. State, 228 Ind. 450, 467, 93 N.E.2d 184, 191, the court, after saying, "It must be presumed that" defendant's "attorney discharged his full duty and it should require strong and convincing proof to overcome this presumption," went on to say that defendant, having this burden, "did not produce his attorney's affidavit or testimony." But here defendant did produce his attorney's affidavit which demonstrates that the attorney did not, to say the least, "discharge his full duty."

My colleagues, surprisingly, refer to cases in which a defendant who, *without any previous inquiry as to the consequences,* is convicted on a plea of guilty, later learns that, because of his conviction, he has lost his civil rights or is ineligible for enlistment in the armed services. What has any such case to do with this case where the defendant did inquire whether conviction could lead to a life of exile and received the answer that it could not, an answer given by his lawyer, who ought eminently to know how ridiculous that answer was?

We must not be gullible but must eye with due suspicion attempts to use the Rule to circumvent justice. But, as Cardinal de Retz observed, more men become dupes through fear of being taken in than through over-gullibility. As an earnest that this man is not playing a game with the court, not seeking by clever tricks to evade his just deserts, we have this striking fact: He has already served his two-year jail sentence. Yet he is willing to take the chance of a new trial, as a result of which, unless the jury acquits him, he will not be sent again to jail but to the death c᷈ ᷈ir, so that the sentence he has served ᷈᷈ count for nothing.

Sometimes a statute inescapably commands judges to conform to a legal ritual indifferent to justice. Then, regret it as we may, we judges must administer "injustice according to law." But we should regard such instances as exceptional, deplorable, and should not, generalizing from them, conclude that doing justice is not our role, that the "administration of justice" is an empty phrase not to be taken literally. When, therefore, a Rule tells us in the plainest words to avoid manifest injustice, I believe we should eagerly embrace the opportunity, not extend earlier decisions to escape it.

Judicial sensibilities ought not to be markedly different from those of the layman. I think, if he understood this case, it would severly shock the sense of justice—or injustice[16]—of the ordinary citizen to learn that this court (a) denies

---

15. See, e. g., Williams v. Kaiser; 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Von Moltke v. Gillies; 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

16. See Cahn, The Sense of Injustice (1949).

this defendant the chance he asks to go to trial so that he may prove, if he can, his innocence, and (b) permits him to be deported because of his lawyer's astonishing ignorance. I believe that such a shock plainly manifests injustice.

In fairness to counsel who advised defendant, I must add that, in criticizing his conduct severely, I am relying on what appears in the present record. Were the case remanded for further proceedings (as I think it should be) perhaps he could then satisfactorily explain his extraordinary conduct. But, in deciding this appeal, we must take the record as it now stands. That record, I think, shows that defendant has been most unfairly treated. It would be unfair to him if, in order to be fair to his counsel, we now conjectured that the latter had some good but undisclosed reason for the advice he gave.

I think, therefore, that we should reverse and remand for a hearing on evidence in open court as to any pertinent issue of fact.

### On Petition for Rehearing

HINCKS, Circuit Judge.

The case of United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, which the appellant now cites, is not applicable to the situation here which rather falls within the holding of United States v. Panebianco, 2 Cir., 208 F.2d 238.

The petition is wholly denied.

FRANK, Circuit Judge (dissenting).

Defendant in his petition for rehearing cites United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, as showing the error of my colleagues' position that important "collateral consequences" do not suffice to establish "manifest injustice" on a motion for leave to withdraw a plea of guilty after sentence. I agree with the defendant as to the pertinence of the Morgan case. It did not involve Criminal Rule 32(d), but Morgan held that a sentence, based on a plea of guilty, imposed many years earlier in the federal district court, should be vacated because it had had the "collateral consequence"

of adding to the length of Morgan's subsequent sentence, in another case, by a New York court. Indeed, Mr. Justice Minton gave as one ground of his dissent in the Morgan case, 346 U.S. at page 515, 74 S.Ct. at page 254, that "all federal consequences" of the federal sentence had ended.

My colleagues now cite United States v. Panebianco, 2 Cir., 208 F.2d 238, 239. There our opinion states: "The appellant pleaded guilty with full knowledge of the nature of the charge against him and on the advice of competent counsel." Here no one ventures to suggest that defendant received such advice.