**UNITED STATES v. PARRINO.**

No. 187, Docket 22603.

United States Court of Appeals Second Circuit.

Argued Feb. 9, 1953.

Decided April 2, 1953.

Vine H. Smith, Brooklyn, N. Y., for appellant.

Daniel H. Greenberg, New York City, Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, Thomas F. Burchill, Jr., Asst. U. S. Atty., New York City, of counsel, for appellee.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Parrino appeals from an order of Judge Ryan, dismissing a motion made under Section 2255 of the Civil Code[1] to vacate a judgment of conviction entered on December 13, 1951. The motion was a sequel of our decision in the same case, rendered on March 7, 1950, and reported in 2 Cir., 180 F.2d 613. An indictment, returned in October 1948, charged Parrino in two counts: the first, for kidnapping and holding for

---

1. § 2255, Title 28, U.S.C.

ransom one, Rozen, a French seaman; and, the second for conspiracy to commit that crime.[2] Rozen had been kidnapped in August 1934, and an indictment was filed in September of that year against a number of persons—Parrino among them —some of whom were tried and convicted. Parrino absconded, and while he was in hiding Judge Knox, on motion of the District Attorney, entered a *nolle prosequi* on the indictment in November 1937. Parrino then came back to his home in Brooklyn in 1940 and lived there openly until he was discovered and indicted in 1948, as we have just said. He was brought to trial and raised the defence of the Statute of Limitations which the judge overruled because he held that the crime was punishable by death.[3] In charging the jury he told them that, if they found that Rozen had not been "liberated unharmed" they were to say whether they recommended the death penalty. They returned a verdict of guilty on both counts without any such recommendation, and the judge imposed a sentence of twenty-five years. We reversed this conviction, because we held that the crime was not punishable with death unless the kidnapped person had not been "liberated unharmed," that the period of limitation was three years, unless he had not been so "liberated," that it did not appear whether or not he had been, and that in the absence of such a finding we could not say that the Statute of Limitations had not barred the indictment.

When the case came on for trial again before Judge Leibell, Parrino entered a plea of guilty on the conspiracy count, apparently upon tacit agreement of the prosecution that the substantive count should be withdrawn. When questioned by the clerk, Parrino declared that he understood the charge and would plead "on one condition," which, however, he withdrew after he had talked with his attorney who was in court. After an adjournment of two weeks the case came on for sentence before Judge Samuel H. Kaufman, and both the prosecuting attorney and Parrino's made statements at length to the judge. That of the prosecuting attorney gave a detailed account of the facts that included torture of Rozen by the conspirators to force him to declare that he had stolen a package of heroin that the conspirators had been expecting to receive from an incoming steamer on which Rozen had been serving. In his reply Parrino's attorney stated in excuse that Parrino, though present at the torture of Rozen, did not "participate in any of the inhuman acts," and did not know "what he was doing there." He added that "there was considerable testimony that he," Rozen, "was released unharmed"; from which he concluded that "it could very well be that upon retrial this man would have gone free." He then addressed himself to persuading the judge to impose a light sentence, saying among much else: "Mr. Parrino is in that category of one who was not the main culprit, and being in the same status with this other one of three years, would not ordinarily get more than three years." Parrino was of course in court at the time, and there is no evidence that he could not understand English. Upon these statements of the attorneys and upon the prosecution's withdrawing the substantive count, the judge imposed a sentence of two years, which will be followed by deportation, a consequence that under the circumstances will be substantially the equivalent of adding the punishment of exile to that prescribed by the statute.

Seven months later, on July 30, 1952, Parrino retained a second attorney who made the motion now at bar, to vacate the sentence under § 2255. It is somewhat difficult to spell out from the attorney's supporting affidavit what are the grounds for this application; certainly it contained nothing that had any bearing upon those mentioned in § 2255; and—what is more important—nothing to intimate that Parrino did not understand that he was admitting that Rozen was not "liberated unharmed." Judge Ryan denied the motion because the indictment had alleged that it was a part of the conspiracy that the kidnappers should "beat and torture" Rozen, and because he thought that enough to

2. §§ 1201(a) and 1201(c), Title 18, U.S.C.

3. §§ 3281, 3282, Title 18, U.S.C.

285 286

make the crime punishable with death. Hence a plea of guilty tolled the three years Statute of Limitations. Parrino took an appeal by Mr. Vine H. Smith, his third attorney, from this order and that is the appeal before us. In his brief Mr. Smith argues that the motion should be taken as made, not only under § 2255, but also under Criminal Rule 32(d) "to withdraw a plea of guilty * * * to correct manifest injustice * * * after sentence".

This aspect of the appeal we will consider first, assuming, *arguendo,* that the motion may be treated, as though made under that Rule. Even so, we cannot find anything either in the colloquy that took place when Parrino entered the plea, or in his second attorney's affidavit in the district court that makes it "manifest injustice" to let the plea stand, except that, as we have said, Parrino and his wife and child, both citizens, will be exiled. Whatever may be our personal feelings about the severity of that penalty, obviously they should not intrude into our decision. The only fact that is possibly relevant is that he did not understand that the plea was an abandonment of his chance to set up the bar of the statute. We cannot, of course, know what he personally supposed, but he was twice represented by attorneys, loyal so far as appears, who both consented to his entering the plea, and who, if they understood our opinion at all, must have realized that the only issue was the Statute of Limitations, and that that turned upon whether Rozen had been "liberated unharmed." The first attorney did indeed say that on another trial it might appear that Rozen had not been "harmed," but that itself showed that he meant to abandon that issue when he let Parrino enter the plea. The second attorney, whose affidavit, as we have said, did not suggest that Parrino did not know that the bar of the statute depended upon whether Rozen had been "liberated unharmed", merely dilated on the injustice of tolling the limitation for so long a time. Finally, in the brief on appeal in this court Mr. Smith does not, and could not, say that the record shows that Parrino pleaded guilty under a mistaken belief that he was misled into admitting what was not the truth, but

he argues that "there is substantial doubt as to whether the defendant did understand all these implications of his plea." Perhaps he did not, but there is not a shadow of affirmative support for such an assumption; and the most that can be said is that he may not have understood the effect of his plea. Yet before Judge Leibell Parrino himself, in answer to the clerk's question whether he wished to change his plea, did so as we have seen, after interposing a "condition" that he withdrew. Certainly that does not suggest an inadequate understanding of English. Besides, it would be unfair to his first two attorneys to assume that they did not explain his position to him. Finally, even though he did not know that his plea would result in deportation, it would not result in "manifest injustice" to hold him to it, if in fact Rozen was not "liberated unharmed," and nowhere in the record before us had Parrino said that he was not. Hence, assuming that we are free to transform the motion into one made under the Rule, it would fail. Whether on a new record Parrino can support such a motion is another matter, not now before us.

It remains to consider whether the record, *i.e.,* the second count of the indictment and the plea of guilty, will sustain the conviction without any evidence as to whether Rozen was "liberated unharmed." On its face the indictment showed that the conspiracy had ended more than three years before the indictment was filed. Literally this may not be true; but we cannot take seriously the possibility that such a conspiracy entered into in August, 1934, had not ended before the date when the indictment was found: October 19, 1948. In 1872 the Supreme Court held in United States v. Cook, 17 Wall. 168, 179, 21 L.Ed. 538, that "accused persons may avail themselves of the statute of limitations by special plea or by evidence under the general issue, but that courts of justice * * will not quash an indictment because it appears on its face that it was not found within the period prescribed." That decision has remained undisturbed for over 80 years, and it is therefore still the rule, unless Criminal Rules have changed it, and

we do not think that they have. Rule 12 (a) abolished all defensive pleadings except "not guilty," and provided that "defenses * * * which heretofore could have been raised" by demurrer "shall be raised only by motion to dismiss." From that it follows that, since the question decided in United States v. Cook, supra, could not be raised by demurrer under the old practice, it may not now be raised by motion to dismiss and, if so, it must be raised by the plea of "not guilty." In short, the law is the same as before except that the defence of the statute may no longer be raised by "special plea," such pleas having been abolished. Thus, as we see it, if the plea stands, the defence of the Statute of Limitations is out of the case, and the only question open is whether Parrino shall be allowed to withdraw it.

 Judge Ryan did not indeed dispose of the case in quite this way. As we understand his opinion, he supposed that since the plea admitted that it was a part of the conspiracy that the accused should "beat and torture" Rozen, the crime alleged was one punishable by death, and, if it was punishable by death, there was no period of limitation. This reasoning presupposed that the court could decide whether the indictment was barred by the Statute of Limitations by an inspection of the pleadings, which, as we have seen, we think incorrect. That is an error that we might feel free to disregard, but we do not think we can disregard the express ruling that, if a conspiracy contemplates returning the victim not "unharmed," the punishment may be death, whether he was, or was not, in fact "liberated unharmed," or indeed whether the conspiracy went so far as even to kidnap him at all. We do not so read the section; on the contrary we understand that under § 1201(c), as well as under § 1201(a), the punishment of death is reserved for cases in which the victim has been in fact kidnapped and not "liberated unharmed." That does not mean that all occasions in which a number of persons conspire to kidnap, and do kidnap, a person and do not "liberate" him "unharmed" are within both subsections. It is a condition in subsection (a) that the vic-

tim shall be in fact transported in interstate commerce, and that is not a condition in subsection (c). Thus, a conspiracy contemplating such transportation is enough to constitute a violation of subsection (c), though not to impose the death penalty unless the victim has been kidnapped and not "liberated unharmed." Our reading of subsection (c) which might be satisfied without any transportation whatever, does not therefore mean that there is no distinction between the subsections except that (a) requires only one principal and (c) requires several. The crimes are quite separate, but the imposition of the death penalty in each depends upon the same facts. Had Parrino shown that Rozen was not kidnapped, or that, having been kidnapped, he was "liberated unharmed," the crime charged in the second count would not have been punishable by death, and would therefore have been barred by the three year statute.

We repeat: nothing we say is to be taken as bearing on the question whether Parrino may not upon another record move to withdraw his plea under Rule 32(d).

Order affirmed.