Johnny Ray SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15295.

United States Court of Appeals
Fifth Circuit.

June 21, 1955.

Johnny Ray Smith, in pro. per., for appellant.

Hartwell Davis, U. S. Atty., Robert E. Varner, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before HOLMES and RIVES, Circuit Judges, and THOMAS, District Judge.

RIVES, Circuit Judge.

This appeal is from an order declining to entertain a second motion for relief under Title 28 U.S.C.A. § 2255. It is settled in this Circuit that the disposition of such a second or successive motion for relief depends upon the sound judicial discretion of the district court subject to review on appeal for abuse of discretion. Hallowell v. United States, 5 Cir., 197 F.2d 926, 928; see also Bar-

rett v. Hunter, 10 Cir., 180 F.2d 510, 514, 515, 20 A.L.R.2d 965.

The material averments of the second motion are as follows:

"One—Petitioner had been seriously injured before and at the immediate time of his apprehension. Suffering from serious bodily injuries, weak from a heavy loss of blood, sick with influenza, feverish to the point of deliriousness, and being in physical pain, and under mental stress, your petitioner was not in fit or proper physical or mental condition to face or stand judicial proceedings liable to cost forfeit of his life. The facts shown that your petitioner was apprehended four (4) days after the offense with which he was charged had been committed. Petitioner was taken into Court sixty eight (68) hours after his arrest. Petitioner was denied medical treatment for his obvious illness, and injuries, and, on request was flatly refused the undoubted right granted him by the Constitution to contact with an attorney of law, or have any visits from family or friends, petitioner was held in solitary confinement without clothing, was allowed only one thin blanket to keep warm in the unheated cell, petitioner was brusquely informed that his sole and whole chance to ever again see the light of day, was to tell the Court that he the petitioner didn't want any lawyer, wanted to plead guilty to the charge. Further, your petitioner was flatly informed that the judge would ask him if he had been coerced, or threatened to do any of the above, and that his best out was to answer in the negative.

"The minutes of the proceedings had shown the foregoing, however, a search for truth by this court would destroy the technical usefulness of the minutes, as they are based on fear, violence and coercive practices.

"In the case at bar, your petitioner had been browbeaten and frightened into entering a plea of guilty to a crime that he did not commit. Your petitioner was told that he would receive the death penalty unless he entered a plea of guilty, that the only possible way he could avoid the death penalty, that the only out for him, was to enter a plea of guilty. Your petitioner a poorly educated farm boy did not have any knowledge of law and did not know that the death penalty could not be imposed in his case was put in mortal fear of his life before he agreed to enter a plea of guilty.

"Your petitioner was told that the Court could not impose the death penalty unless your petitioner went to trial and was found guilty by a jury.

"Your petitioner believing that his life was in danger of being forfeited, agreed to follow instructions and enter a plea of guilty, waive indictment and counsel.

\* \* \* \* \* \*

"Your petitioner was told that his two codefendants would receive light sentences that would not exceed four years each or until they were of twenty one years age and that your petitioner would receive a similar sentence.

"Your petitioner, while in a groggy and befuddled mental condition, weak from his illness and injuries, was taken unfair advantage of, was deprived of his constitutional rights through trickery and fraud. A search for truth by this Court would confirm your petitioners allegations. Your petitioner did not intelligently waive Constitutional rights to counsel, but to the contrary, your petitioner was tricked into waiving his every constitutional right.

"Two—The supersonic speed and rapidity of the proceedings had, clearly shown a desire on the part of

the arresting officers and the prosecutor to make away with petitioner before his recovery from the pain and shock of his injuries and illness would require a careful handling of the case. As it was, the Court in belief that justice was being done, went through the cold formalities of the law, and in so doing, may have provided a legal record, but said record is a fraudulent one when perused to the facts not shown therein, but as herein averred.

"Three—Prior to petitioner's plea of guilty in open Court, an agent of the Federal Bureau of Investigation, entered the trial Judge's private chambers, and thereupon told the trial judge that your petitioner had committed a number of crimes which had never been tested in a court of law, and that petitioner had admitted committing said crimes, had made an oral statement to that effect, said agent in question was John W. Lill, the Investigative agent in the case at bar.

"The crimes, agent Lill told the Court, that petitioner had committed was the (1) attempted murder of an officer of the law, to wit one Bill Gilbert, a deputy sheriff at Panama City, Florida. (2) Burglary, of a Mr. Lemmon's home near Blontstown, Florida. (3) Stealing and transporting stolen fire-arms across a state line. (4) Stealing and transporting an automobile across a state line.

\* \* \* \* \* \* \*

" \* \* \* This agent claims that your petitioner gave him oral statements admitting guilty of the crimes he discussed the Court in private chambers. The above crimes were untested in a court of law. Your petitioner did not admit guilty or make oral admissions to these false, untested crimes, but to the contrary, your petitioner vehemently denies any guilt or knowledge of these untested crimes. Further,

your petitioner could vindicate himself of said crimes should they be tested in a court of law."

Paragraphs numbered one and two of the second motion, supra, are substantially a restatement of the grounds of the first motion. The first motion had also been denied without a hearing, the court stating: "The Court has made a careful examination of the files and records of the case, and the files and records conclusively show that the prisoner is entitled to no relief."

What the record reveals is briefly as follows: Johnny Ray Smith was arrested at Dothan, Alabama, on November 18, 1949, at 3:30 P.M., charged with having "knowingly transported in interstate commerce from Calhoun County, Florida, to Coffee County, Alabama, Alan W. Spearman, Jr., who was unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted or carried away and held against his will in violation of U.S.C. Title 18, Section 1201." Two codefendants, Richard Dale Nunn and Robert P. Jenks, were arrested on the same day and charged with the same offense. On November 21, 1949, as to each defendant, indictment was waived, jurisdiction or venue waived from the southern to the northern division of the judicial district, representation by counsel waived, and a plea of guilty entered. The record contains a stenographic transcript of the proceedings had in open court on November 21, 1949, in which the court explained to each of the defendants his right to a lawyer, asked each whether any threats had been made against him, explained the right to an indictment before a grand jury and the right to be tried in the southern division rather than in the northern division of the court. The defendants gave replies to the court which would permit it to proceed. In the same proceeding, the court then accepted the pleas of guilty of all three defendants, inquired whether they had been threatened or coerced, and they jointly answered, "No"; inquired their ages, the other two defendants each answered

17 years and Johnny Ray Smith answered 26 years. Smith made a short statement to the court before sentence was imposed as follows:

"Deft. Smith: Well, your Honor, I would like for you to take under consideration that there was no viciousness in connection with this abduction of this boy. We were nice to him and did not harm him any way and we wanted transportation and did not harm him any at all.

"The Court: You held him up at the point of a gun to make him bring you up here, did you not?

"Deft. Smith:' Yes, mam. (sic)

"The Court: You are now under sentence in Florida for five years. That case is on appeal, is it not?

"Deft. Smith: Yes, sir. That is right.

\*      \*      \*      \*      \*      \*

"The Court: *Mr. Lill has gone over this case with me.* Johnny Ray Smith, in your case, sentence of the law that you be in the custody of the Attorney General for a period of thirty years." (Emphasis supplied.)

Each of the other defendants was sentenced for fifteen years.

■ The record does not and could not negative the movant's detailed allegations of coercion outside of the presence of the court to induce him to waive counsel, to enter a plea of guilty, and even to deny to the court that he had been coerced or threatened. Both motions thus set up matters dehors the record, which, if true, would mean that the defendant's conviction was lacking in due process; and, under the cases of United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, and Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, it seems clear that the movant was entitled to a hearing and to an opportunity to prove the facts which he had alleged in his motions. See, also, Davis v. United States, 8 Cir., 210 F.2d 118, same case on remand, D.C.N.D.Cal., 123 F.Supp. 407, 414. As was · said in Walker v.

Johnston, supra, 312 U.S. at page 287, 61 S.Ct. at page 579: "The Government's contention that his allegations are improbable and unbelievable cannot serve to deny him an opportunity to support them by evidence. On this record it is his right to be heard."

In United States v. Hayman, supra, 342 U.S. at pages 219, 220, 72 S.Ct. at page 272, the Supreme Court said:

"The issues raised by respondent's motion were not determined by the 'files and records' in the trial court. In such circumstances, Section 2255 requires that the trial court act on the motion as follows: '\*   \*   \* cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto.' (Emphasis supplied.) In requiring a 'hearing,' the Section 'has obvious reference to the tradition of judicial proceedings'. Respondent, denied an opportunity to be heard, 'has lost something indispensable, however convincing the *ex parte* showing.' We conclude that the District Court did not proceed in conformity with Section 2255 when it made findings on controverted issues of fact relating to respondent's own knowledge without notice to respondent and without his being pre$ent."

The Court went on to say: "Where, as here, there are substantial issues of fact as to events in which the prisoner participated, the trial court should require his production for a hearing." 342 U.S. at page 223, 72 S.Ct. at page 274. The Court further commented: "The very purpose of Section 2255 is to hold any required hearing in the sentencing court because of the inconvenience of transporting court officials and other necessary witnesses to the district of confinement." 342 U.S. at pages 220, 221, 72 S.Ct. at page 273.

It may be true that Section 2255 has simply changed the practical problem

from that of transporting court officials and witnesses to the district of confinement to that of transporting the prisoner to the district of his trial. It is also true that prisoners may often make reckless and untrue allegations to get a free ride rather than in the hope of any ultimate relief. It may well be that prosecutions for perjury or for contempt of court are not sufficient safeguards against such abuses. If not, the answer must come from Congress, for it is obvious under the decisions in Walker v. Johnston, supra, and United States v. Hayman, supra, that issues can easily be framed upon which the prisoner is entitled to a hearing, and that, in such cases, when the court no longer goes to the prisoner, the prisoner must be brought to the court.

Paragraph number three of the second motion, quoted supra, had not appeared in the first motion. That paragraph relates to the presentence information given to the district court by FBI Agent Lill. The second motion quotes at length from Lill's testimony on a habeas corpus hearing in California and attaches a copy of the order of the Ninth Circuit holding habeas corpus not available on the ground that the required proceeding should be a motion under Section 2255, citing United States v. Hayman, supra. Pursuant to that decision of the Ninth Circuit, the District Court of the Northern District of California entered an order on March 10, 1954 dismissing the petition for habeas corpus.

■ The lack of constitutional and evidentiary safeguards thrown around a convicted offender is in striking contrast to those surrounding him before he is found guilty. See Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337; Friedman v. United States, 8 Cir., 200 F.2d 690, 697; Robinson v. Swope, 9 Cir., 197 F.2d 633; United States v. Rosenberg, 2 Cir., 195 F.2d 583, 604, et seq. Yet every lawyer engaged in defending criminal cases knows that often a finding of guilt is a foregone conclusion, and that the real issue centers about the severity of the punishment. Rule 32(c) (1) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that the probation service's report of its presentence investigation "shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty." Whenever it is at all practicable to observe such safeguards, we agree with what was said by the Sixth Circuit sitting en banc in Stephan v. United States, 133 F.2d 87, 100:

"We think, however, that such information should have been disclosed to the Judge in open court and in the presence of appellant. Such appears to have been the practice in the cases cited. We think that the interest of convicted persons about to be sentenced is more carefully safegurded by open hearings under such rules as the court may adopt."

■■ Further, a convicted offender is not completely beyond the pale of constitutional protection. A sentence imposed by a state court has been held lacking in due process where the defendant was not represented by counsel and the sentence was imposed by the trial judge under the mistaken belief that the defendant was guilty of other crimes. Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690; followed in Keenan v. Burke (Foulke v. Burke), 342 U.S. 881, 72 S.Ct. 162, 96 L.Ed. 661. The due process clause of the Fifth Amendment protects those convicted in the federal courts no less than that of the Fourteenth Amendment protects those convicted in the state courts. If, as the motion alleges, the defendant had not been convicted of, and had not committed, the crimes about which it is alleged that Agent Lill informed the district court, and if Agent Lill did in fact give false information as alleged to the district court, then the defendant's sentence would be lacking in due process, and subject to attack under Section 2255.

Accordingly, the order of the district court is reversed and the case remanded for a hearing under Section 2255.

Reversed and remanded.

THOMAS, District Judge.

I respectfully dissent.