**Johnny Ray SMITH, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 16068.

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1956.

William B. Moore, Jr., Montgomery, Ala., for appellant.

Hartwell Davis, Robert E. Varner, Asst. U. S. Attys., Montgomery, Ala., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This is the appellant's second appearance in this court in support of his efforts to obtain Sec. 2255 [1] relief from a sentence of thirty years imposed on him on November 21, 1949, on his plea of guilty to an information [2] charging him with violation of the Kidnapping Act, Sec. 1201(a), Title 18 U.S.C.

When he was first here in propria persona, the appeal was from an order denying his motion without a hearing on the ground that the files and records conclusively showed that he was entitled to no relief. This court,[3] quoting freely from the motion and pointing out that it set up matter de hors the record, the truth of which could be determined only by a hearing and an opportunity to prove the facts alleged, reversed the order and remanded the cause "for hearing under Sec. 2255".

This time the appeal is from an order entered by Judge Johnson, successor to Judge Kennamer, deceased, after a full hearing had been afforded to the movant with ample opportunity to present his claims and support them by evidence and argument, and movant is represented by court appointed counsel, Wm. B. Moore,[4] of Montgomery, Alabama, a trial advo-

1. Title 28 U.S.C.

2. The body of which reads as follows:
"The United States Attorney charges: On or about November 14, 1949, Johnny Ray Smith, Richard Dale Nunn, and Robert Peter Jenks did knowingly transport in interstate commerce from Calhoun County in the State of Florida, to Coffee County in the Middle District of Alabama, a person, to-wit, Alan W. Spearman, Jr., who had been unlawfully seized, kidnapped, abducted, and carried away and held for the safe conduct of the three defendants from Calhoun County, Florida, to Coffee County, Alabama."

3. Smith v. United States, 5 Cir., 223 F.2d 750.

4. At the conclusion of the presentation below, the district judge in open court stated:
"Mr. Moore, at this time, I would like to state for the record, since you have served on this case, by virtue of the Court's appointment without any compensation, since the Court knows that you have spent considerable amount of time, even days investigating this case, to the extent of going to South Alabama and Northern Florida, investigating and interrogating witnesses at your own expense, that in my judgment your actions and your attitude are commendable and I want to express my appreciation to you for your conscientiousness, that your actions, your attitude and the manner in which you

cate of ability and standing, who brought to the conduct of the cause a high order of skill and ability and conducted it as an advocate should with diligence, earnestness, and devotion.

In addition, the district judge, affording the movant and his counsel and the government and its counsel full time and all reasonable and proper opportunity to obtain and present all pertinent evidence, conducted the hearings and heard the arguments with a judicial patience and detachment, as commendable as it is rare in cases of this kind, and, the hearing concluded, formed and stated his findings of fact and conclusions of law on the issues as he saw them with an eye single to the truth and justice of the case.

This court therefore approaches the consideration and disposition of this appeal in the confidence that all of the evidence having a bearing on the issues was developed below, that the record therefore presents not a partial and distorted, but a complete and true picture of what occurred in the critical period before and at the time of the taking of the waivers, the entry of the movant's plea and the imposition of his sentence, and that because of the thoroughness and conscientiousness with which the case has been developed and presented below and here, a concise and simple statement of the undisputed facts [5] and of the controlling principles will suffice for its decision.

Influenced no doubt by the vigor with which movant presses his claims of physi-

have represented this man without compensation reflects not only credit upon you as an attorney and member of the bar but upon the Bar Association. I thank you."

5. On Nov. 12, 1949, the movant and his co-defendants escaped from the jail in Panama City, Florida, where they were in custody on state charges.

In the course and as a part of making good their escape, the movant and his co-defendants, in the State of Florida and by force seized one Alan W. Spearman, Jr., and his automobile and carried both into Alabama where Spearman was released unharmed.

Apprehended on Friday, Nov. 18, 1949, in Geneva, Alabama, by agents of the F.B.I., movant on the afternoon of that day was taken before the United States Commissioner at Dothan, Alabama, and there charged with the kidnapping and placed in jail. On the following Monday morning, Nov. 21, 1949, he was brought to Montgomery by one of the agents, John Lill, and with his co-defendants in a brief session in open court waived indictment and venue and the right to the assistance of counsel, pleaded guilty, and was given a sentence of thirty years.

As a preliminary to the proceedings leading up to and culminating swiftly in plea of guilty and sentence, movant was on Nov. 19th fully interviewed by Lill concerning the kidnapping case and his prior criminal record and activities, and on Monday morning, the 21st, the day of the sentence, movant and his co-defendants were brought by Lill to the office of the United States Attorney, where they were

talked to by him with regard to waiving indictment and venue and pleading to the information which he proposed to file.

At or about and during the time this was going on, Lill, the government agent, had a private out of court audience and conference with Judge Kennamer in his chambers, in which, in the absence of the defendant, he discussed with the judge the contemplated proceedings against the defendants on the kidnapping charge. Lill stated: "He asked me about their background and I told him all that I had learned from the defendants about their previous records".

After the judge's mind had become thoroughly conditioned by this interview with, and the disclosures made to him by, Lill to regarding the defendants and particularly Smith as dangerous, hardened and perhaps incorrigible criminals who had not only committed the crime for which they were then being held but other heinous crimes, including as to Smith armed robbery and the wounding of a deputy sheriff, the conference in chambers was concluded. There followed in open court a stilted and formal colloquy consisting of brief and didactic statements by the judge, that the charge against the defendants was a serious one, that under it they could be sent to the penitentiary for a long time, that they had a right to have or waive the assistance of counsel and prosecution by indictment, and equally brief and didactic inquiries whether threats or promises had been made to them to induce waivers, and "dispose of the case today", which were answered in the negative. The defendants were then asked if they

cal and mental unfitness and his charges that Lill had made false statements to the judge as to what movant had told him as to his criminal record and activities, and perhaps to some extent misled by the importance attached, in the opinion of this court on the former appeal, to the charge that Lill had made *false statements,* the district judge, in determining the over all question presented by the motion, whether movant was entitled to relief, did not consider the condition of the defendant, Lill's unauthorized and impermissible conference with the district judge, the haste with which the movant was rushed to trial and sentenced, and the other pertinent circumstances as separate factors entering into and bearing on the determination of the question. Instead, concluding that there were three separate and distinct questions for decision, he saw and stated them as follows.

The first was whether movant's physical and mental condition at the time of the making of his waivers and the entry of his plea was itself such that he was because thereof in no shape, without the assistance of counsel, to undergo the strains and rigors of a court appearance, nor could he intelligently make or fully appreciate the gravity of the decisions as to waivers and plea he was called upon to make in connection with the grave and serious charge he was called upon to answer to. On this issue, the district judge found against movant's contention.

The second, as the district judge understood it, was whether the Agent, John Lill, in his interview and conference with Judge Kennamer in his chambers outside of the hearing of the movant and prior to the time the plea of guilty was entered, made false statements as to what Smith had told him of his prior criminal record and activities. Finding

wished to make the waivers and "you understood what you were doing when you were making these waivers?", and upon their answering, "Yes", the court said, "Let the defendants sign the waivers". Thereupon the district attorney put to each of the defendants the formal question, "Have you read that and had it explained to you by the court, and the defendants answering "Yes, Sir", he presented the defendants with, and obtained their signatures to, written waivers of counsel, of indictment and venue.

The proceedings thereafter continuing to move at the same swift and planned pace, the district attorney asked the defendants whether they had been furnished with a copy of the charge and what was their plea, the defendants answered "Yes" and "Guilty", and the court asking "Each of you plead guilty to this information and you are aware of the fact that the court could sentence you to life imprisonment?", and the defendants answering 'Yes', the court went on: "No one has promised you anything or given you any inducement to enter a plea of guilty or threatened or coerced you into doing so?", to which the defendants answering, "No, Sir.", the court, acting not upon information obtained in open court by questioning the defendants or in any other way, but acting upon and entirely upon information obtained from the prosecution through Lill, its

agent, thus began the proceedings, resulting in the actual sentencing:

"I will say I am really amazed myself with your present criminal activities and, in Smith's case particularly, it is pretty bad, and not good for these other boys." Then, after making an inquiry as to the ages of the defendants, he went on: "Is there anything further you wish to say, Smith, before sentence is imposed?" Smith replying, "Well, your Honor, I would like for you to take under consideration that there was no viciousness in connection with this abduction of this boy. We were nice to him and did not harm him anyway, and we wanted transportation and did not harm him any at all." "You held him up at the point of a gun to make him bring you up here." Smith answering, "Yes, Sir", the court proceeded with the sentencing thus: "Mr. Lill has gone over this case with me. Smith, in your case sentence of the law is thirty years, Nunn fifteen, Jenks fifteen. All you boys under the the law are eligible for parole when you serve these sentences. I don't know whether you should be paroled. You have shown an indication that you are going to spend your life in crime. It looks like you have dedicated your lives to crime. If you are ever going to change it, it is time now. You can't escape this punishment and under the circumstances I think it is moderate."

specifically that everything Lill had told Judge Kennamer on this occasion was true and correct, he decided this issue against movant.

The third issue, which had been raised by amendment, with leave of the court, was whether the information charged an offense punishable by death and therefore, under rule 7(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., providing that offenses punishable by death could be prosecuted only by indictment, the district attorney had no right to file the information, the defendant no right to waive the indictment and consent to the information, and the court was therefore without jurisdiction to hear and adjudge. On this issue the district judge, on the authority of United States v. Parker, 3 Cir., 103 F.2d 857 and United States v. Parrino, 2 Cir., 180 F.2d 613, held: that, since under the undisputed facts Spearman, the victim of the kidnapping, was released unharmed, the offense with which movant was charged was not, it could not be, an offense punishable by death; that the district attorney had the right to proceed by information instead of indictment; the defendant had the right to consent thereto; and the district judge had jurisdiction in the cause.

■ It is our opinion that upon these issues thus separately posed, which the district judge erroneously believed to be all the issues presented for decision, the evidence furnished ample support for his findings of fact and law.

While upon the first issue, as the judge framed it, there was evidence showing that Smith had certainly suffered some injuries and had undergone great physical hardships in the course of his flight and before his arrest, and he was laboring under great strain, mental and physical, when in the manner shown in the undisputed evidence he was put upon his trial, the evidence certainly supports the finding of the district judge that at the time of his sentencing his condition was neither mentally nor physically such that, merely because thereof, it was a denial of due process to put him on trial.

Upon the second issue, which the district judge stated as whether Lill made false statements to Judge Kennamer about Smith's statements to him as to his previous convictions and offenses, we agree with the district judge that there was ample basis in the evidence for his finding that Smith did not prove his charges and that neither intentionally nor unintentionally did Lill make false statements of fact to Judge Kennamer in the course of his conference with him in chambers.

■■ Upon the third issue, we think it crystal clear, not only upon the teachings of the cases cited by the district judge, to which may be added Brown v. Johnston, 9 Cir., 126 F.2d 727, and United States v. Parrino, 2 Cir., 203 F.2d 284, which, though dealing with indictments instead of informations, decided the precise question involved here, whether under facts similar to those here the offense charged was a capital offense, but also, the cases aside, upon a consideration of the controlling principles, that his decision on this issue was right. Indeed, we think that a different decision would have marked a return to views [6] once prevailing but long since outworn and abandoned, that in a criminal case every "i" must be dotted, every "t" crossed. The provision of the Fifth Amendment regarding prosecution by indictment preserves merely a right which a defendant may waive, Barkman v. Sanford, 5 Cir., 162 F.2d 592, and Congress, by the definiteness and clear provision of Rule 7(a) has specifically con-

---

6. It was said of Old Caesar Kasm, in "Flush Times In Alabama and Mississippi", published in 1853, at pp. 53-54, "He would have revolutionized the government if he could, should a law have been passed, curing defects in Indictments.

"Yet he was a friend of strong government and strong laws; he might approve of a law making it death for a man to blow his nose in the street, but would be for rebelling if it allowed the indictment to dispense with stating in which hand he held it." Cf. Whitehead v. United States, 5 Cir., 245 F. 385.

ferred upon the district attorney without leave or consent of the court, provided only the defendant consents in open court to waive indictment and proceed by information, the absolute and unqualified right, the equally absolute and unqualified duty, to decide whether to so prosecute any case in which the death penalty was not sought or could not be imposed.

Under the authority so conferred, when the district attorney elected to proceed by information with the defendants' consent thereto, the filing of the information conferred jurisdiction upon the court to hear and determine the offense charged in it and to impose upon the defendant any punishment except death. The fact in this case that, under the undisputed evidence, Spearman was released unharmed, making it impossible to impose the death penalty, made it entirely proper, under the authorities above cited, to proceed by information consented to by the defendants. Indeed, we think that if Spearman had not been released unharmed and the United States District Attorney could have proceeded against him by indictment and if he had been convicted, and the jury so recommended, the death penalty could have been imposed upon him, it was still within the competence of the district attorney, if he elected to do so, not to proceed by indictment but with the defendant's consent by information, and when he elected to so proceed, the filing of the information would have conferred full and complete jurisdiction on the court to proceed with the prosecution as for a non-capital offense.

■ When it comes to the controlling question, however, which the motion presents, whether under the undisputed facts the defendant was denied due process in the taking of waivers and plea, and the imposition of sentence the matter stands quite differently, and because it is clear that it was not accorded to him, the judgment appealed from must be reversed.

This is so, because, considering the inordinate speed, the incontinent haste, with which the defendants were brought up for hearing and the trial moved on apace, the fact that the government prosecuting agent and the district judge, before the defendant had made any waivers or pleaded in the cause, conferred privately in chambers with regard to defendants' guilt and the punishment to be imposed therefor, in connection with both what was said and done and what was left unsaid and undone by the judge in taking the waivers and the plea and sentencing the defendant, we are left in no doubt that the movant was not accorded, but was denied, due process, and that the judgment against, and sentence imposed upon him may not stand.

The principles applicable and controlling here have been declared in the cases so often and without varying so adhered to that it will suffice to state them with the greatest brevity and to cite some of the leading cases in support. Basically, these principles are as follows.

An accused is entitled to the assistance of counsel for his defense unless he waives that assistance voluntarily with an understanding and appreciation of the nature of the charges against him, the range of allowable punishments therefor, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to making an intelligent and understanding waiver, Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 and cases interpreting and applying its teachings and holdings.[7]

■ In addition, the Fifth Amendment provides in part that no person shall be held to answer for a capital or other-

7. United States v. Christakos, D.C., 83 F. Supp. 521, affirmed Woolard v. United States, 5 Cir., 178 F.2d 84; Martin v. United States, 5 Cir., 182 F.2d 225, 20 A.L.R.2d 1236; Smith v. United States, 5 Cir., 223 F.2d 750; Gadsden v. United States, 96 U.S.App.D.C. 162, 223 F.2d 627; Hinton v. United States, 5 Cir., 232 F.2d 485, 486; Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; United States v. Morgan, 2 Cir., 222 F.2d 673; Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690.

wise infamous crime unless on a presentation or indictment of a Grand Jury, and, though that provision, intended, as it is, as a protection to the individual, may be waived, it is of the essence of such a waiver that, as with waiver of counsel, it be intelligently, voluntarily, and understandingly made. Rule 7(b), Federal Rules of Criminal Procedure expressly provides as a condition of waiver that the defendant must be advised of the *nature of the charge and of his rights and waive in open court prosecution by indictment.* Further, the *fact that the defendant has waived counsel and indictment does not permit his plea of guilty to be taken without first advising him, fully and not merely perfunctorily, as to the nature of the charges and as to his rights with respect to them, and ascertaining that his plea is being intelligently and understandingly made.*

■ *Finally, a defendant who, having first been presented with waivers to sign and having waived counsel and the benefit of consideration by a Grand Jury, is permitted by the Court to plead guilty instead of standing trial, is entitled to have the judge before whom he stands approached and act in the case with complete judicial detachment, uninfluenced by conferences in chambers with agents of the prosecution.*

*Because of the wholly impermissible action of the judge and the agent in privately conferring on this case* and because the district judge in his findings in the case made none why the defendants lent themselves to the precipitate haste with which the prosecution sought to tie up the case and to bring it to a speedy conclusion by charge, waivers and sentence, we will not discuss what seems so obvious to us, that hopes had been somehow raised in the minds and hearts of the defendants. Admittedly, questions of possible punishments were discussed with them, and it strains credulity to believe that movant and his codefendants were rushing on their fate without having some cause for the hope and belief that, in thus accommodating themselves to the desires of the government agents

that speedy justice be done, they were placing themselves in a position to have their cases and all matters in mitigation or aggravation of their punishment considered by the judge carefully, judicially and on their real merits and not on the basis, as was apparently done, of treating all of the offenses, with which Lill advised the judge they had been charged, as though they had been convictions instead of charges. Cf. Motley v. U. S., 5 Cir., 230 F.2d 110.

■ *It is sufficient, we think, to point up the determinative issue here,* to close this opinion with a quotation from the opinion of Judge Lynne in the Christakos case, 83 F.Supp. 521, 525, where, analyzing and discussing the limits, as well as the scope of the Von Moltke case, supra, and pointing out the paramount necessity of a district judge's always remaining a district judge and not becoming, wittingly or unwittingly, an instrument of the prosecution, he said:

"There is something essentially incongruous in a judge's arrogation of the office of an attorney in relation to an accused. He is not entitled to information relating to the social and economic background of a defendant, including his prior criminal record, if any as disclosed by the report of presentence investigation, until after a plea of guilty has been received. It is fair to assume that this safeguard was inserted in the criminal rules to insure the fact, as well as the appearance, that the judge is an arbiter and not an arm of the prosecution."

The judgment is reversed and the cause is remanded with directions to grant the motion, to set aside the conviction and sentence, and to proceed further and not inconsistently herewith.

RIVES, Circuit Judge (concurring in part and dissenting in part).

What my brothers call "the third issue" seems to me to be not a frivolous technicality, but the *primary* question of jurisdiction. As to capital offenses,

I think that the historic function of the Grand Jury has been preserved and that an indictment is still essential.

Jurisdiction must be properly invoked, and in cases where an indictment is required, lack of indictment goes to the court's jurisdiction.[1] At common law only misdemeanors, or the less serious offenses, could be prosecuted by information; and an accused could not be held to answer for a capital offense or a felony except on presentment or indictment of a Grand Jury.[2]

The Fifth Amendment to the Constitution provides in part that:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, * * ."

This Court has held that that provision of the Fifth Amendment was intended as a protection to the individual and may be waived by the accused. Barkman v. Sanford, 5 Cir., 162 F.2d 592, 594. Jurisdiction cannot, however, be conferred by consent; and some law permitting the prosecution of the offense by information is essential to the court's jurisdiction. United States v. Gill, supra. The law relied on is Rule 7(a) and (b), F.R.Crim. Proc., reading as follows:

"(a) Use of Indictment or Information. An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. An information may be filed without leave of court.

"(b) Waiver of Indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor may be prosecuted by information if the defendant, after he has been advised of the nature of the charge and of his rights, waives in open court prosecution by indictment." 18 U.S.C.A.

That rule relieved the prosecutor from the necessity theretofore existing[3] of obtaining leave of court for the filing of an information. It expressly furnished no authority, however, for the prosecution by information of an offense which might possibly be punished by death. "An offense which may be punished by death shall be prosecuted by indictment." Rule 7(a), F.R.Crim.Proc., 18 U.S.C.A.

A reading of the statute defining the offense[4] makes it clear that the liberation of the kidnapped person unharmed is not part of the offense itself, but is something which occurs, if at all, after the offense has been committed and which may then mitigate the permissible punishment. Whether the kidnapped person has been liberated unharmed may often be a debatable question. It is possible that the liberation may occur after the charge has been brought, and, in cases of prior liberation, it is possible that undiscovered harm may thereafter develop. It was well said by Judge Learned

---

1. Ex parte Bain, 121 U.S. 1, 12, 13, 7 S. Ct. 781, 30 L.Ed. 849; Barkman v. Sanford, 5 Cir., 162 F.2d 592; Pugh v. United States, 9 Cir., 212 F.2d 761, 764; United States v. Gill, D.C.N.M., 55 F.2d 399, 404.

2. Albrecht v. United States, 273 U.S. 1, 6, 7, 47 S.Ct. 250, 71 L.Ed. 505, where it was observed that there had been practically no use of criminal informations in federal courts prior to 1870; 27 Am.Jur., Indictments and Informations, § 5; 42 C.J.S., Indictments and Informations, § 12.

3. Albrecht v. United States, supra.

4. "(a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away and held for ransom or reward or otherwise, except in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed." Title 18, U.S.C.A. § 1201(a).

Hand in United States v. Parrino, 2 Cir., 180 F.2d 613, 615:

> "We agree that the indictment stated all the essentials of the crimes charged, and that it was not necessary to allege that the victim was not released 'unharmed' in order that the jury might recommend the death-penalty. That is an allegation going only to the punishment, and although the accused has to be adequately advised of it, since the jury must pass upon it, it will be enough if he gets the information in season from any source."

In Robinson v. United States, 6 Cir., 144 F.2d 392, 393, 396, the appellant contended that the following part of the statute as it then existed violated the Fifth and Sixth Amendments:

> " 'shall, upon conviction, be punished (1) by death if the verdict of the jury shall so recommend, *provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed * * * .'* "  144 F.2d at page 396.

Judge Hicks, speaking for the court, said:

> "We have italicized that portion which allegedly contravenes the indicated amendments. The criticism of these provisions is that they are too vague, uncertain and indefinite to form the basis of a valid indictment. The short answer is, that the provisions do not constitute an element or ingredient of the offenses denounced in Sec. 408a. They relate

to the punishment and there is nothing in the Constitution which grants the accused the right to be informed of the punishment that may be inflicted upon him by law. The offense is the subject of an indictment, not the punishment. The punishment is the remedy the law provides, and is not, except perhaps in exceptional cases to be set forth in the indictment. See Bishop on Criminal Law, 3rd Ed., Vol. I, Sec. 204."  144 F.2d at page 396.

Even appellant's plea of guilty may not have relieved him of the possibility of suffering death as punishment for the offense. In Seadlund v. United States, 7 Cir., 97 F.2d 742, 743, it was held permissible for the court, after accepting a plea of guilty, to submit to a jury the question calling for its recommendation as to the death penalty.

Jurisdiction must exist from the beginning and it should affirmatively appear of record. If we assume, contrary to the foregoing authorities, that the fact of liberation of the kidnapped person unharmed reduces the grade of the offense instead of going only to the punishment, still an express averment of such fact is necessary to keep the offense charged from being one which *may* be punished by death. The information in the present case contained no such averment. See Footnote 2 to the main opinion. In the face of the requirement that "An offense which may be punished by death shall be prosecuted by indictment" no one could reasonably seek to sustain an information charging murder,[5] unless the offense

---

5. "§ 1111. *Murder.*
"(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

"Any other murder is murder in the second degree.
"(b) Within the special maritime and territorial jurisdiction of the United States,
"Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life;
"Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."  Title 18, U.S.C.A. § 1111.

charged by the terms of the information itself was murder in the second degree. It makes no difference that the jury might add to its verdict "without capital punishment" or might find the defendant guilty of some non-capital offense.[6] By the same token, an information for transporting a kidnapped person under 18 U.S.C.A. § 1201(a) cannot be permitted, unless it contains an averment that the kidnapped person has been released unharmed.

Where the question is one of limitations,[7] of place of trial,[8] or of some other matter not essential to the court's jurisdiction, it may be proper to look to the evidence to determine whether or not the offense is punishable by death. For certain other purposes, for example, the admission to bail,[9] the furnishing vel non of a copy of the indictment and a list of the veniremen and of the witnesses at least three entire days before commencement of the trial,[10] the allowance of either 20 or 6 peremptory challenges of jurors,[11] the taking of the evidence cannot be awaited. Jurisdiction, above all other matters, must exist from the beginning, and should affirmatively appear of record.

While Rule 7, F.R.Crim.Proc., vests wide discretion in the United States Attorney and frees him from the necessity of obtaining leave of court in cases *properly* prosecuted by information, its language leaves no doubt that such uncontrolled discretion does not include the right to preclude the imposition of the death penalty in any case which might possibly be so punished, a discretion which could theretofore be finally exercised by no one man alone. And only the President might pardon or relieve the defendant of the death penalty after it had been imposed.

The gravity of capital offenses, even when the punishment actually imposed is imprisonment instead of death, requires the presentment or indictment of a Grand Jury, and, hence, a more solemn and measured prosecution than can occur over a weekend.[12]

In my opinion, the jurisdiction of the court over the offense was never properly invoked, and I, therefore, respectfully dissent from that part of the opinion dealing with the so-called "third issue". The other questions ruled on by the majority I do not reach, but concur in the judgment of reversal and dissent from the remand for further proceedings.

6. "(c) *Conviction of Less Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." Rule 31(c), F.R. Crim.Proc.

7. United States v. Parrino, supra; on second appeal, 2 Cir., 203 F.2d 284, 287.

8. United States v. Parker, supra.

9. 18 U.S.C.A. § 3141.

10. 18 U.S.C.A. § 3432. In Brown v. Johnston, 9 Cir., 126 F.2d 727, 728, it would appear that the indictment alleged that the kidnapped person had been liberated unharmed.

11. Rule 24(b), F.R.Crim.Proc., 18 U.S. C.A.

12. Arrested Friday, the appellant was sentenced to thirty years imprisonment the following Monday morning.