**Franklin Delano FLOYD, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 28721**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 25, 1970.

Joseph H. Davis, Macon, Ga., Franklin Delano Floyd, pro se, for plaintiff-appellant.

William J. Schloth, U. S. Atty., Macon, Ga., D. L. Rampey, Jr., Asst. U. S. Atty., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

PER CURIAM:

In this appeal from a judgment denying Appellant relief under 28 U.S. C.A. § 2255, the only issue presented is whether the District Court's finding that Appellant was mentally competent on

July 12, 1963 to waive indictment and to plead guilty to a bank robbery charge is supported by sufficient evidence. We believe that it was so supported and affirm.[1]

This is the second appearance of this case here. In Floyd v. United States, 5 Cir., 1966, 365 F.2d 368, where the events, including his escape from a mental hospital and examination pursuant to 18 U.S.C.A. § 4244, leading up to Floyd's plea of guilty to the bank robbery charge are set out, this Court remanded this case for a factual hearing. The conclusion that Floyd was competent reached by the District Court following that hearing, which was held on July 10, 1969, almost three years after remand, is what we review here.

■ The tragic life of Franklin Delano Floyd is chronicled by the District Court.[2] And the product of this life is

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part I.

2. "Movant's life has been tragic and excites much sympathy. His father, an alcoholic, died when movant was one year old. The mother who had been abused by the father took to an immoral life. Movant and several of his four older brothers and sisters were placed in the Georgia Baptist Children's Home at Hapeville, Georgia. Thence he escaped at the age of 14 or 15 after receiving a whipping which he says he deserved. Then he was rejected by relatives at Bessemer, Alabama and Gainesville, Georgia. He then went to a sister in Sumter, North or South Carolina, and ran off after a few days when his brother-in-law tried to whip him. The Domestic Relations Judge there took him in and cared for him for four or five months. Then he found and joined his mother in Indianapolis, Indiana for two and a half weeks when she signed papers for him to join the Army and she then left with her paramour for parts unknown. He entered the service in June, 1959 and served in Missouri and Oklahoma for about six months, when he was discharged for being under age. He says he felt happy and secure while in the Army and that that was the only time in his life when he had some self-respect and a feeling of belonging to a worthwhile organization. After his discharge in December, 1959, he drifted to Indianapolis; where he had last seen his mother, and then to Philadelphia, New York, Miami, Atlanta, New Orleans, and finally to Los Angeles. He had to steal to eat. In February, 1960, after concealing himself in a Sears Roe-buck store in Los Angeles until after closing hours and after preparing and eating some food, he attempted to open a gun showcase, thus triggering a burglar alarm. He shot at the police officer and the police officer shot him. He was committed to the Youth Institution at Preston, California from June 21, 1960 until August, 1961, when he was released on parole. On November 1, 1961, he violated his parole by leaving the State without permission and going on a camping venture to Canada or possibly Alaska with another youth, James Marvin, who apparently had come into ample funds. He was retaken into custody and after a social evaluation by a senior social worker and a psychiatric evaluation by Dr. Edward R. Hodgson, Chief Psychiatrist (G–13) was returned to parole after two months. In May of 1962, he returned to Atlanta. He says he was settled in Atlanta with a good job at Eastern Air Lines when he was soon arrested on a charge of child molestation. Represented by a prominent attorney who was apparently appointed to the case he was convicted by a jury and sentenced to serve 10 to 20 years in Reidsville State Prison. He began this service in July, 1962, and on November 1, 1962 was sent to the Milledgeville State Hospital. There he was examined by Dr. James B. Craig as a member of a psychiatric screening board which met there on a regular basis. In evidence is a copy of the complete medical record of movant at Milledgeville State Hospital (M–3) including two reports by Dr. Craig, one dated November 1, 1962, and the other December 13, 1962. While still a patient at this hospital and while being escorted to an eye doctor he escaped on March 14, 1963, stole a car in Milledgeville, drove to Macon, bought a pellet pistol and on March 15, 1963 robbed the Citizens and Southern Bank of $6,810.28. Arrested the same day, he orally confessed to the F.B.I. Agents on March 26, 1963. He insists and has insisted all the while that

a young man whose ability to cope adequately with the world has been severely impaired. We do not here, however, review his mental accountability to do the act, robbery of the bank. Rather, we are concerned with his mental accountability to stand trial and to plead guilty. See Johnson v. United States, 5 Cir., 1965, 344 F.2d 401. But under the standards by which we must judge, Rees v. Peyton, 1966, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583; Dusky v. United States, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824,[3] we can not say that the District Court was clearly erroneous in its determination that Floyd was competent to stand trial. Cheely v. United States, 5 Cir., 1966, 367 F.2d 547; Stonecipher v. United States, 5 Cir., 1969, 409 F.2d 745.

■ The District Court's findings were made after a full hearing at which Floyd was well represented by appointed counsel. Unlike the earlier consideration leading to our reversal, the Court acted on testimony and depositions, not merely on hospital and medical reports and records, although such reports were used.

The majority of the testimony came from the physician, Dr. Craig, who was treating Floyd shortly before his escape from the mental hospital. His testimony was that Floyd was suffering from chronic, undifferentiated schizophrenia. Dr. Craig said Floyd had an intellectual understanding and appreciation of the events, but that he may have had a compulsion for punishment. He was unable to say whether Floyd was actually operating under compulsion, but believed this to be the most likely explanation for apparently irrational behavior. Thus, his testimony, the strongest for Appellant, does not require the conclusion that Appellant was incompetent.

Moreover, the physician, Dr. Broucek, who examined Floyd pursuant to the 18

---

he is innocent of the State molestation charge and that he robbed the bank in order to get money to employ counsel to re-open that case and to establish his innocence in respect to that charge. On April 1, 1963, on motion of the District Attorney, this court entered an order pursuant to 18 U.S.C.A. § 4244 requiring a judicial determination of movant's mental competency to stand trial. Under that order movant remained at the United States Penitentiary, Atlanta, Georgia, from April 4, until June 28, 1963. There

he was examined by the prison psychiatrist, Dr. Francis J. Broucek, who reported his findings to the court (G–3) under date of June 17, 1963. With the aid of court appointed counsel movant waived indictment and pleaded guilty to this bank robbery charge on July 12, 1963, and was given an indeterminate sentence, the maximum being fixed at 15 years, but with eligibility for parole at such time as the Board of Parole may determine. His service of this sentence has been as follows:

| | |
|---|---|
| Chillicothe, Ohio | July 24, 1963 to October 26, 1963 |
| Lewisburg, Pennsylvania | October 26, 1963 to June 5, 1964 |
| Medical Center | |
| Springfield, Missouri | June 5, 1964 to February 6, 1965 |
| Marion, Illinois | February 6, 1965 to February 15, 1968 |

---

On or about February 15, 1968 he was released by federal authorities to State authorities at Reidsville, Georgia to serve the balance of his bank robbery sentence concurrently with the State child molestation sentence. Meanwhile, however, he had attempted an escape from Chillicothe on September 27, 1963 and in the United States District Court for the Southern District of Ohio he received, on October 21, 1963, a consecutive sentence of 5 years for escape, plus a concurrent sentence of 3 years for injury to Government property."

3. The test, largely anticipated by this Court, cf. Smith v. United States, 5 Cir., 1956, 238 F.2d 925, approved in Dusky, *supra*, is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402, 80 S.Ct. at 789, 4 L.Ed.2d at 825. See also Johnson v. United States, 5 Cir., 1965, 344 F.2d 401; Winn v. United States, 1959, 106 U.S.App.D.C. 133, 270 F.2d 326.

U.S.C.A. § 4244 proceeding indicated through reports that he did not believe Floyd was schizophrenic, but believed he was suffering from a less severe personality disorder. Dr. Broucek did not believe there were indications of a compulsive desire for punishment that impaired Floyd's ability to understand what was going on and to make a choice whether to plead guilty.

From such evidence it was for the District Court to find the facts. And such findings can not be disturbed here.

Affirmed.